**No. 23-2992, consolidated with Nos. 23-2993, 23-2994, 23-2995, 23-2996, 23-2997, 23-2998, 23-2999, 23-3000, 23-3001, 23-3002, and 23-3003**

# In the United States Court of Appeals for the Seventh Circuit

---

KEELY ROBERTS, and JASON ROBERTS, individually and as parents
and next friends of C.R and L.R.,
PLAINTIFFS-APPELLEES,

*v.*

SMITH & WESSON BRANDS, INC., SMITH & WESSON SALES COMPANY, and
SMITH & WESSON, INC.,
DEFENDANTS-APPELLANTS,

and

BUDSGUNSHOP.COM, LLC, RED DOT ARMS, INC., ROBERT CRIMO, JR., and
ROBERT CRIMO, III,
NON-APPELLANT DEFENDANTS.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

Nos. 1:22-cv-06169, 1:22-cv-06171, 1:22-cv-06178, 1:22-cv-06183, 1:22-cv-06185,
1:22-cv-06190, 1:22-cv-06193, 1:22-cv-06359, 1:22-cv-06181, 1:22-cv-06191,
1:22-cv-06361, 1:22-cv-06186

THE HONORABLE JUDGE STEVEN CHARLES SEEGER

---

**BRIEF OF PLAINTIFFS-APPELLEES**

---

*CONTINUED ON NEXT PAGE*

*CONTINUED FROM PRIOR PAGE*

ALEXANDER G. TIEVSKY*
J. ELI WADE-SCOTT
EDELSON P.C.
350 N. LASALLE STREET, 14TH FLOOR
CHICAGO, IL 60654
312-242-0859
atievsky@edelson.com

ERIN DAVIS
PHILIP BANGLE
BRADY CENTER TO PREVENT GUN VIO-
LENCE
840 FIRST STREET NE, SUITE 400
WASHINGTON, DC 20002
(202) 370-8100

DONNA J. VOBORNIK
BRIAN E. COHEN
DENTONS US LLP
233 S. WACKER DRIVE, SUITE 5900
CHICAGO, IL 60606-6361
312-876-8000

*Counsel of record in Case Nos. 23-2999
and 23-3002

ATTORNEYS FOR ELIZABETH TUR-
NIPSEED AND JOSHUA CHUPACK, INDI-
VIDUALLY AND AS PARENTS AND NEXT
FRIENDS OF I.C.

H. CHRISTOPHER BOEHNING**
PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
cboehning@paulweiss.com

ANTONIO M. ROMANUCCI
DAVID A. NEIMAN
ROMANUCCI & BLANDIN, LLC
321 NORTH CLARK STREET, SUITE 900
CHICAGO, IL 60654
(312) 458-1000

ALLA LEFKOWITZ
EVERYTOWN LAW
P.O. BOX # 14780
WASHINGTON DC 20044
(202) 545-3257

** Counsel of record in Case Nos. 23-2992, 23-2993,
23-2994, 23-2995, 23-2996, 23-2997, 23-2998, 23-3000,
23-3001, 23-3003

ATTORNEYS FOR KEELY ROBERTS AND JASON ROB-
ERTS, INDIVIDUALLY AND AS PARENTS AND NEXT
FRIENDS OF C.R. AND L.R., SYLVIA VERGARA, LIZET
MONTEZ, GABRIELA VERGARA, MICHAEL AND CHRIS-
TINE ZEIFERT, INDIVIDUALLY AND AS PARENTS AND
NEXT FRIENDS OF B.R.Z., B.M.Z., K.Z., AND L.Z., LAU-
REN AND MICHAEL BENNETT, INDIVIDUALLY AND AS
PARENTS AND NEXT FRIENDS OF T.B. AND W.B., TER-
RIE BENNETT, JEFFREY BENNETT, DEBORAH SAMU-
ELS, ELLIOT SAMUELS, RICARDO TOLEDO, INDIVIDU-
ALLY AND AS SPECIAL ADMINISTRATOR OF THE ESTATE
OF NICOLAS TOLEDO, DECEASED, PETRA TOLEDO,
JOSEFINA TOLEDO, ALEJO TOLEDO, LORENA REBOL-
LAR SEDANO, MIRNA RODRIGUEZ AND OSCAR
SANCHEZ, INDIVIDUALLY AND AS PARENTS AND NEXT
FRIENDS OF J.S., K.S., AND O.S., PETER STRAUS AND
JONATHAN STRAUS, AS CO-ADMINISTRATORS OF THE

*ESTATE OF STEPHEN STRAUS, DECEASED, BRUCE SUNDHEIM, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF JACQUELINE SUNDHEIM, DECEASED, AMELIA TENORIO AND ANTONIO MELGAR, INDIVIDUALLY AND AS PARENTS AND NEXT FRIENDS OF C.M.*

KEITH L. HUNT
DELANEY A. HUNT
HUNT LAW PC
*2275 HALF DAY RD SUITE 126*
*BANNOCKBURN, IL 60015*
*(312) 558-1300*

*ATTORNEYS FOR KEELY ROBERTS AND JASON ROBERTS, INDIVIDUALLY AND AS PARENTS AND NEXT FRIENDS OF C.R. AND L.R., MICHAEL AND CHRISTINE ZEIFERT, INDIVIDUALLY AND AS PARENTS AND NEXT FRIENDS OF B.R.Z., B.M.Z., K.Z., AND L.Z.*

JANUARY 23, 2024

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __23-2992_____

Short Caption: __Keely Roberts v. Smith & Wesson Brands, Inc., et al_____

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

       [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    _See Appendix_____

    _____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    _Paul, Weiss, Rifkind, Wharton & Garrison LLP, Everytown Law, Romanucci & Blandin LLC_____

    _____

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        _N/A_____

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        _N/A_____

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
    _N/A_____

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
    _N/A_____

---

Attorney's Signature: _/s/ H. Christopher Boehning_____ Date: _November 9, 2023_____

Attorney's Printed Name: _H. Christopher Boehning_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes [4] No [ ]

Address: _1285 Avenue of the Americas_____

       _New York, New York 10019_____

Phone Number: _(212) 373-3000_____ Fax Number: _(212) 492-0061_____

E-Mail Address: _cboehning@paulweiss.com_____

rev. 12/19 AK

H. Christopher Boehning
United States Court of Appeals for the 7th Circuit
Appearance & Circuit Rule 26.1 Disclosure Statement
Appendix to Question #1

Jeffrey Bennett
Michael Bennett
Antonio Melgar
Lorena Rebollar Sedano
Keely Roberts
Deborah Samuels
Oscar Sanchez
Peter Straus
Amelia Tenorio
Josefina Toledo
Ricardo Toledo
Sylvia Vergara
Lauren Bennett
Terrie Bennett
Lizet Montez
Jason Roberts
Mirna Rodriguez
Elliot Samuels
Jonathan Straus
Bruce Sundheim
Alejo Toledo
Petra Toledo
Gabriela Vergara
Christine Zeifert
Michael Zeifert


*Lauren Bennett, et al* v. *Smith & Wesson Brands, Inc., et al*, 23-2993
*Bruce Sundheim* v. *Smith & Wesson Brands, Inc., et al*, 23-2994
*Lorena Rebollar Sedano* v. *Smith & Wesson Brands, Inc., et al*, 23-2995
*Mirna Rodriguez, et al* v. *Smith & Wesson Brands, Inc., et al*, 23-2996
*Sylvia Vergara, et al* v. *Smith & Wesson Brands, Inc., et al*, 23-2997
*Michael Zeifert, et al* v. *Smith & Wesson Brands, Inc., et al*, 23-2998
*Peter Straus, et al* v. *Smith & Wesson Brands, Inc., et al*, 23-3000
*Ricardo Toledo, et al* v. *Smith & Wesson Brands, Inc., et al*, 23-3001
*Amelia Tenorio, et al* v. *Smith & Wesson Brands, Inc., et al*, 23-3003

Save As     Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>23-2992</u>

Short Caption: <u>Keely Roberts, et al v. Smith & Wesson Brands, Inc, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>See Exhibit 1.</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Romanucci & Blandin, LLC; Everytown Law; Paul, Weiss, Wharton & Garrison LLP; Hunt Law, P.C.</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and
<u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
<u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
<u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
<u>N/A</u>

Attorney's Signature: <u>/s/ Antonio M. Romanucci</u>      Date: <u>11/16/2023</u>

Attorney's Printed Name: <u>Antonio M. Romanucci</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: <u>321 N Clark Street, STE 900</u>

    <u>Chicago, IL 60654</u>

Phone Number: <u>312-253-1000</u>      Fax Number: <u>312-253-1004</u>

E-Mail Address: <u>aromanucci@rblaw.net</u>

rev. 12/19 AK

**Exhibit 1**
*Antonio M. Romanucci is*
*Representing*

***Keely Roberts, et al v. Smith & Wesson Brands, Inc., et al; 23-2992***
    Jason Roberts, individually and as parent and next friend of C.R. and L.R.
    Keely Roberts, individually and as parent and next friend of C.R. and L.R.

***Lauren Bennett, et al v. Smith & Wesson Brands, Inc., et al; 23-2993***
    Jeffrey Bennett
    Lauren Bennett
    Michael Bennett
    Terri E. Bennett
    Deborah Samuels
    Elliot Samuels

***Bruce Sundheim v. Smith & Wesson Brands, Inc., et al; 23-2994***
    Bruce Sundheim, as Special Administrator of the Estate of Jacqueline Sundheim, deceased

***Lorena Rebollar Sedano v. Smith & Wesson Brands, Inc., et al; 23-2995***
    Lorena Rebollar Sedano

***Mirna Rodriguez, et al v. Smith & Wesson Brands, Inc., et al; 23-2996***
    Mirna Rodriguez, individually and as parent and next-friend of J.S., K.S., and O.S.
    Oscar Sanchez, individually and as parent and next-friend of J.S., K.S., and O.S.

***Sylvia Vergara, et al v. Smith & Wesson Brands, Inc., et al; 23-2997***
    Lizet Montez
    Gabriela Vergara
    Sylvia Vergara

***Michael Zeifert, et al v. Smith & Wesson Brands, Inc., et al; 23-2998***
    Christine Zeifert, individually and as parent and next-friend of B.R.Z., B.M.Z., K.Z., and L.Z.
    Michael Zeifert, individually and as parent and next-friend of B.R.Z., B.M.Z., K.Z., and L.Z.

***Peter Straus, et al v. Smith & Wesson Brands, Inc., et al; 23-3000***
    Jonathan Straus, as Co-Administrators of the Estate of Stephen Straus, deceased
Peter Straus, as Co-Administrators of the Estate of Stephen Straus, deceased

***Ricardo Toledo, et al v. Smith & Wesson Brands, Inc., et al; 23-3001***
    Alejo Toledo Josefina
    Toledo Petra Toledo
    Ricardo Toledo, individually and as Special Administrator of the Estate of Nicolas Toledo, deceased

***Amelia Tenorio, et al v. Smith & Wesson Brands, Inc., et al;* 23-3003**

Antonio Melgar, individually and as parent and next-friend of C.M.

Amelia Tenorio**,** individually and as parent and next-friend of C.M.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2992

Short Caption: Keely Roberts, et al v. Smith & Wesson Brands, Inc, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
  See Exhibit 1.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
  Romanucci & Blandin, LLC; Everytown Law; Paul, Weiss, Wharton & Garrison LLP; Hunt Law, P.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and
    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
  N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
  N/A

Attorney's Signature: /s/ David A. Neiman     Date: 11/16/2023

Attorney's Printed Name:  David A. Neiman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]   No [✓]

Address:  321 N Clark Street, STE 900

  Chicago, IL 60654

Phone Number: 312-253-1000     Fax Number: 312-253-1004

E-Mail Address:  dneiman@rblaw.net

rev. 12/19 AK

**Exhibit 1**
*David A. Neiman is Representing*

### *Keely Roberts, et al v. Smith & Wesson Brands, Inc., et al;* 23-2992
Jason Roberts, individually and as parent and next friend of C.R. and L.R.
Keely Roberts**,** individually and as parent and next friend of C.R. and L.R.

### *Lauren Bennett, et al v. Smith & Wesson Brands, Inc., et al;* 23-2993
Jeffrey Bennett
Lauren Bennett
Michael Bennett
Terri E. Bennett
Deborah Samuels
Elliot Samuels

### *Bruce Sundheim v. Smith & Wesson Brands, Inc., et al;* 23-2994
Bruce Sundheim, as Special Administrator of the Estate of Jacqueline Sundheim, deceased

### *Lorena Rebollar Sedano v. Smith & Wesson Brands, Inc., et al;* 23-2995
Lorena Rebollar Sedano

### *Mirna Rodriguez, et al v. Smith & Wesson Brands, Inc., et al;* 23-2996
Mirna Rodriguez, individually and as parent and next-friend of J.S., K.S., and O.S.
Oscar Sanchez, individually and as parent and next-friend of J.S., K.S., and O.S.

### *Sylvia Vergara, et al v. Smith & Wesson Brands, Inc., et al*; 23-2997
Lizet Montez
Gabriela Vergara
Sylvia Vergara

### *Michael Zeifert, et al v. Smith & Wesson Brands, Inc., et al;* 23-2998
Christine Zeifert, individually and as parent and next-friend of B.R.Z., B.M.Z., K.Z., and L.Z.
Michael Zeifert**,** individually and as parent and next-friend of B.R.Z., B.M.Z., K.Z., and L.Z.

### *Peter Straus, et al v. Smith & Wesson Brands, Inc., et al;* 23-3000
Jonathan Straus, as Co-Administrators of the Estate of Stephen Straus, deceased
Peter Straus, as Co-Administrators of the Estate of Stephen Straus, deceased

### *Ricardo Toledo, et al v. Smith & Wesson Brands, Inc., et al;* 23-3001
Alejo Toledo Josefina
Toledo Petra Toledo
Ricardo Toledo**,** individually and as Special Administrator of the Estate of Nicolas Toledo, deceased

***Amelia Tenorio, et al v. Smith & Wesson Brands, Inc., et al;*** **23-3003**

Antonio Melgar, individually and as parent and next-friend of C.M.

Amelia Tenorio**,** individually and as parent and next-friend of C.M.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>23-2992</u>

Short Caption: <u>Keely Roberts, et al v. Smith & Wesson Brands, Inc., et al</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>see Exhibit 1</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Everytown Law; Paul, Weiss, Rifkind, Wharton & Garrison LLP; Hunt Law, P.C.; and Romanucci & Blandin, LLC</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>n/a</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>n/a</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>n/a</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>n/a</u>

Attorney's Signature: <u>s/Alla Lefkowitz</u>      Date: <u>11/10/2023</u>

Attorney's Printed Name: <u>Alla Lefkowitz</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐   No ☑

Address: <u>P.O. Box 14780, Washington, DC 20044</u>

Phone Number: <u>(202) 545-3257</u>      Fax Number: <u>(917) 410-6932</u>

E-Mail Address: <u>alefkowitz@everytown.org</u>

rev. 12/19 AK

**Exhibit 1**
*Every Party Alla Lefkowitz is Representing*

***Keely Roberts, et al v. Smith & Wesson Brands, Inc., et al; 23-2992***
    Jason Roberts, individually and as parent and next friend of C.R. and L.R.
    Keely Roberts**,** individually and as parent and next friend of C.R. and L.R.

***Lauren Bennett, et al v. Smith & Wesson Brands, Inc., et al; 23-2993***
    Jeffrey Bennett
    Lauren Bennett
    Michael Bennett
    Terri E. Bennett
    Deborah Samuels
    Elliot Samuels

***Bruce Sundheim v. Smith & Wesson Brands, Inc., et al; 23-2994***
    Bruce Sundheim, as Special Administrator of the Estate of Jacqueline Sundheim, deceased

***Lorena Rebollar Sedano v. Smith & Wesson Brands, Inc., et al; 23-2995***
    Lorena Rebollar Sedano

***Mirna Rodriguez, et al v. Smith & Wesson Brands, Inc., et al; 23-2996***
    Mirna Rodriguez, individually and as parent and next-friend of J.S., K.S., and O.S.
    Oscar Sanchez, individually and as parent and next-friend of J.S., K.S., and O.S.

***Sylvia Vergara, et al v. Smith & Wesson Brands, Inc., et al; 23-2997***
    Lizet Montez
    Gabriela Vergara
    Sylvia Vergara

***Michael Zeifert, et al v. Smith & Wesson Brands, Inc., et al; 23-2998***
    Christine Zeifert, individually and as parent and next-friend of B.R.Z., B.M.Z., K.Z., and L.Z.
    Michael Zeifert**,** individually and as parent and next-friend of B.R.Z., B.M.Z., K.Z., and L.Z.

***Peter Straus, et al v. Smith & Wesson Brands, Inc., et al; 23-3000***
    Jonathan Straus, as Co-Administrators of the Estate of Stephen Straus, deceased
    Peter Straus, as Co-Administrators of the Estate of Stephen Straus, deceased

***Ricardo Toledo, et al v. Smith & Wesson Brands, Inc., et al;* 23-3001**
    Alejo Toledo
    Josefina Toledo
    Petra Toledo
    Ricardo Toledo**,** individually and as Special Administrator of the Estate of Nicolas
    Toledo, deceased

***Amelia Tenorio, et al v. Smith & Wesson Brands, Inc., et al;* 23-3003**
    Antonio Melgar, individually and as parent and next-friend of C.M.
    Amelia Tenorio**,** individually and as parent and next-friend of C.M.

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-2992

Short Caption: Roberts et al v. Smith & Wesson, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Keely Roberts, individually and as parents and next friend of C.R. and L.R., and Jason Roberts; Michael Ziefert

and Christine Ziefert

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Hunt Law, P.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    Smith and Wesson, Inc.; Smith and Wesson Sales Company; Red Dot Arms, Inc.; Budsgunshop.com, LLC

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

Keely Roberts, C.R., L.R. Jason Roberts, Michael Ziefert, Christine Ziefert

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Keith L. Hunt (electronic signature)    Date: January 19, 2024

Attorney's Printed Name: Keith L. Hunt

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes [✓] No [ ]

Address: 2275 Half Day Road, Suite 126, Bannockburn IL 60015

Phone Number: 312-558-1300    Fax Number: 312-558-9911

E-Mail Address: khunt@huntpclaw.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2992

Short Caption: Roberts et al v. Smith & Wesson et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Keely Robers, individually and as parents and next friend of C.R. and L.R., and Jason Roberts; Michael Ziefert

and Christine Ziefert

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Hunt Law, P.C.

(3)     If the party, amicus or intervenor is a corporation:

i)      Identify all its parent corporations, if any; and

Smith and Wesson, Inc.; Smith and Wesson Sales Company; Red Dot Arms, Inc.; Budsgunshop.com, LLC

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

Keely Roberts, C.R., L.R., Michael Ziefert, Christine Ziefert

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Delaney Hunt (electronic signature)     Date: January 23, 2024

Attorney's Printed Name:

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☑   No ☐

Address: 2275 Half Day Road, Suite 126, Bannockburn, IL 60015

Phone Number: 312-558-1300     Fax Number: 312-558-9911

E-Mail Address: dhunt@huntpclaw.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-2999; 23-3002

Short Caption: Elizabeth Turnipseed v. Smith & Wesson Brands, Inc., et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Elizabeth Turnipseed; Joshua Chupack

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Dentons US LLP, Edelson PC, Brady United

(3)    If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

         N/A

     ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

     N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

     N/A

---

Attorney's Signature: s/ Alexander G. Tievsky      Date: January 9, 2024

Attorney's Printed Name: Alexander G. Tievsky

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]    No [✓]

Address: 350 N. LaSalle St., 14th Floor

         Chicago, IL 60654

Phone Number: 312.589.6370      Fax Number: 312.589.6378

E-Mail Address: atievsky@edelson.com

rev. 12/19 AK

Save As      Clear Form

### APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-2999; 23-3002

Short Caption: Elizabeth Turnipseed v. Smith & Wesson Brands, Inc., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Elizabeth Turnipseed; Joshua Chupack

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Dentons US LLP, Edelson PC, Brady United

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ J. Eli Wade-Scott    Date: November 16, 2023

Attorney's Printed Name: J. Eli Wade-Scott

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes [ ] No [✔]

Address: 350 N. LaSalle St., 14th Floor

Chicago, IL 60654

Phone Number: 312.589.6370    Fax Number: 312.589.6378

E-Mail Address: ewadescott@edelson.com

rev. 12/19 AK

Save As      Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2992; 23-3002

Short Caption: Elizabeth Turnipseed v. Smith & Wesson Brands, Inc., et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
   Elizabeth Turnipseed, Joshua Chupack

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
   Brady United Against Gun Violence; Edelson PC

(3)   If the party, amicus or intervenor is a corporation:

   i)      Identify all its parent corporations, if any; and

         n/a

   ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         n/a

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   n/a

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   n/a

---

Attorney's Signature: _E Da_      Date: 1/23/24

Attorney's Printed Name: Erin Davis

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]   No [✔]

Address: 840 First Street, NE, Suite 400

   Washington, DC 20002

Phone Number: 202-370-8100      Fax Number:

E-Mail Address: edavis@bradyunited.org

rev. 12/19 AK

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>23-2992; 23-3002</u>

Short Caption: <u>Elizabeth Turnipseed v. Smith & Wesson Brands, Inc., et al.</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]  **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Elizabeth Turnipseed, Joshua Chupack</u>

_____

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Brady United Against Gun Violence; Edelson PC</u>

_____

(3)   If the party, amicus or intervenor is a corporation:

   i)   Identify all its parent corporations, if any; and
   <u>n/a</u>

   ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
   <u>n/a</u>

(4)   Provide information required by FRAP 26.1(b) -- Organizational Victims in Criminal Cases:
<u>n/a</u>

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
<u>n/a</u>

_____

Attorney's Signature: _____   Date: <u>5—723,2024</u>

Attorney's Printed Name: <u>Philip Bangle</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]   No [✔]

Address: <u>840 First Street, NE, Suite 400</u>

<u>Washington, DC 20002</u>

Phone Number: <u>202-370-8100</u>                Fax Number: _____

E-Mail Address: <u>pbangle@bradyunited.org</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-3002

Short Caption: Joshua Chupack v. Smith & Wesson Brands, Inc., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Josh Chupack

Elizabeth Turnipseed

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Dentons US LLP, Edelson PC, Brady United

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: s/ Donna J. Vobornik      Date: November 10, 2023

Attorney's Printed Name: Donna J. Vobornik

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ✓   No ☐

Address: 233 S. Wacker Drive, Suite 5900, Chicago, IL  60606

Phone Number: 312-876-8000      Fax Number: 312-876-7934

E-Mail Address: donna.vobornik@dentons.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-3002

Short Caption: Joshua Chupack v. Smith & Wesson Brands, Inc., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [ ]   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Josh Chupack

    Elizabeth Turnipseed

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Dentons US LLP, Edelson PC, Brady United

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

    N/A

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: s/ Brian E. Cohen      Date: November 10, 2023

Attorney's Printed Name: Brian E. Cohen

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [✓]   No [ ]

Address: 233 S. Wacker Drive, Suite 5900, Chicago, IL 60606

Phone Number: 312-876-8000      Fax Number: 312-876-7934

E-Mail Address: brian.cohen@dentons.com

rev. 12/19 AK

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

STATEMENT OF JURISDICTION ..................................................................... 4

STATEMENT OF THE ISSUES ......................................................................... 5

STATEMENT OF THE CASE ............................................................................. 6

    A.    Plaintiffs Were Harmed by the Tragic Shooting in Highland Park, Illinois .................................................................................................... 6

    B.    Plaintiffs Filed Their State-Law Claims in State Court ................................. 7

    C.    Smith & Wesson Removed the Cases to Federal Court ................................. 8

    D.    The District Court Granted Plaintiffs' Motions to Remand ........................... 9

SUMMARY OF ARGUMENT ........................................................................... 10

ARGUMENT ................................................................................................... 12

I.    The District Court Correctly Rejected Federal-Officer Removal ........................... 12

    A.    Regulated Businesses Are Not Federal Officers ............................................ 13

    B.    There Is No "Federal Interests" Exception to the Statutory Requirements Governing Federal-Officer Jurisdiction ................................. 17

II.    The District Court Properly Denied Federal-Question Jurisdiction ...................... 21

    A.    Removal Is Governed by the Well-Pleaded Complaint Rule ......................... 21

    B.    Smith & Wesson Fails to Establish *Grable* Jurisdiction Based on an Embedded Federal Question .......................................................................... 22

    C.    The Artful Pleading Doctrine Does Not Permit Removal Here ................... 38

    D.    The District Court's Rejection of Smith & Wesson's Complete Preemption Argument Was Correct ............................................................. 42

III.    Smith & Wesson's Failure to Obtain Consent From All Defendants Also Prevented Removal .................................................................................................. 45

CONCLUSION ................................................................................................. 49

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fire & Cas. Co.* v. *Finn*,
    341 U.S. 6 (1951)................................................................................47

*New York* v. *Arm or Ally, LLC*,
    644 F. Supp. 3d 70 (S.D.N.Y. 2022)........................................................33

*Barnes* v. *Anyanwu*,
    391 F. App'x 549 (7th Cir. 2010) ...........................................................28

*Bennett* v. *Sw. Airlines Co.*,
    484 F.3d 907 (7th Cir. 2007) ................................................................30

*Betzner* v. *Boeing Co.*,
    910 F.3d 1010 (7th Cir. 2018) ..............................................11, 14, 34

*Bosaw* v. *Nat'l Treasury Emps' Union*,
    887 F. Supp. 1199 (S.D. Ind. 1995).......................................................17

*BP P.L.C.* v. *Mayor & City Council of Balt.*,
    141 S. Ct. 1532 (2021).........................................................................4

*Broder* v. *Cablevision Systems, Corp.*,
    418 F.3d 187, 194-95 (2d Cir. 2005) ....................................................32

*Brownback* v. *King*,
    141 S. Ct. 740 (2021)...........................................................................4

*Buethe* v. *Britt Airlines, Inc.*,
    749 F.2d 1235 (7th Cir. 1984) .............................................................22

*Burda* v. *M. Ecker Co.*,
    954 F.2d 434 (7th Cir. 1992) ...........................................................21, 39

*Cairel* v. *Alderden*,
    821 F.3d 823 (7th Cir. 2016) ..............................................................28

*Caterpillar, Inc.* v. *Williams*,
    482 U.S. 386 (1987)...........................................................................20

*City of Chicago* v. *Beretta U.S.A. Corp.*,
    821 N.E.2d 1099 (Ill. 2004)..................................................................41

## TABLE OF AUTHORITIES
(Continued)

Page(s)

*Cook* v. *Peter Kiewit Sons Co.*,
    775 F.2d 1030 (9th Cir. 1985) ...................................................................17

*Corp. Travel Consultants, Inc.* v. *United Airlines, Inc.*,
    799 F. Supp. 58 (N.D. Ill. 1992) ................................................................43

*Corporan* v. *Wal-Mart Stores E., LP*,
    194 F. Supp. 3d 1128 (D. Kan. 2016) .................................................31, 37

*Daniel* v. *Armslist, LLC*,
    2016 WL 660894 (E.D. Wis. Feb. 17, 2016) .............................................31

*Dugan* v. *Rank*,
    372 U.S. 609 (1963) ....................................................................................17

*East Cent. Ill. Pipe Trades Health & Welfare Fund* v. *Prather Plumbing &*
    *Heating, Inc.*,
    3 F.4th 954 (7th Cir. 2021) .......................................................................22

*Elftmann* v. *Vill. of Tinley Park*,
    191 F. Supp. 3d 874 (N.D. Ill. 2016) ........................................................47

*Empress River Casino Corp.* v. *Loc. Unions No. 9 and 176, Int'l Bhd. of*
    *Elec. Workers*,
    No. 94 C 2379, 1994 WL 262075 (N.D. Ill. June 10, 1994) .....................39

*Ferrell* v. *Yarberry*,
    848 F. Supp. 121 (E.D. Ark. 1994) ...........................................................18

*Minnesota* v. *Fleet Farm*,
    2023 WL 4203088, at *5 (D. Minn. June 27, 2023) ...............................33

*Franchise Tax Bd. of Cal.* v. *Constr. Laborers Vacations Tr. for S. Cal.*,
    463 U.S. 1 (1983) .......................................................................................21

*Franciscan Skemp Healthcare, Inc.* v. *Cent. States Joint Bd. Health &*
    *Welfare Tr. Fund*,
    538 F.3d 594 (7th Cir. 2008) .....................................................................38

*Gen. Auto Serv. Station* v. *City of Chi.*,
    2004 WL 442636 (N.D. Ill. Mar. 9, 2004) ................................................47

*Giles* v. *Chi. Drum, Inc.*,
    631 F. Supp. 2d 981 (N.D. Ill. 2009) .........................................................22

iii

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Goldstein* v. *Earnest,*
    No. 37-2020-00016638-CU-PO-CTL (Ca. Super. Ct. July 2, 2021)............................19, 35

*Grable & Sons Metal Products., Inc.* v. *Darue Engineering &*
    *Manufacturing,*
    545 U.S. 308 (2005).................................................................................................*passim*

*Gunn* v. *Minton,*
    568 U.S. 251 (2013)...................................................................................22, 23, 34, 36

*Hartland Lakeside Joint No. 3 Sch. Dist.* v. *WEA Ins. Corp.,*
    756 F.3d 1032 (7th Cir. 2014).................................................................22, 23, 24, 34

*Illinois Public Risk Fund* v. *Purdue Pharma L.P.,*
    2019 WL 3080929 (N.D. Ill. July 15, 2019) ......................................................41, 42

*Lancaster* v. *Astellas Pharma, Inc.,*
    2008 WL 4378441 (S.D. Ill. Sept. 23, 2008) ...............................................................35

*Leguizamo-Medina* v. *Gonzales,*
    493 F.3d 772 (7th Cir. 2007)........................................................................................39

*Leszanczuk* v. *Carrington Mortg. Servs., LLC,*
    21 F.4th 933 (7th Cir. 2021) .......................................................................................25

*Lewis* v. *Louisville & Nashville R. Co.,*
    758 F.2d 219 (7th Cir. 1985)........................................................................................47

*Lu Junhong* v. *Boeing Co.,*
    792 F.3d 805 (7th Cir. 2015)..................................................................................*passim*

*Arizona* v. *Manypenny,*
    451 U.S. 232 (1981).......................................................................................................17

*Martin* v. *Petersen Health Operations, LLC,*
    37 F.4th 1210 (7th Cir. 2022).........................................................................14, 15, 16

*Merrell Dow Pharms. Inc.* v. *Thompson,*
    478 U.S. 804 (1986)...........................................................................................35, 36, 37

*Mesa* v. *California,*
    489 U.S. 121 (1989).......................................................................................................17

*Miami Herald Media Co.* v. *Fl. Dep't of Transp.,*
    345 F. Supp. 3d 1349 (N.D. Fla. 2018) ......................................................................18

iv

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*N. Ill. Gas Co.* v. *Airco Indus. Gases,*
676 F.2d 270 (7th Cir. 1982) ............................................................45, 48

*Nationwide Invs.* v. *Miller,*
793 F.2d 1044 (9th Cir. 1986) ...............................................................17

*Ne. Rural Elec. Membership Corp.* v. *Wabash Valley Power Ass'n, Inc.,*
707 F.3d 883 (7th Cir. 2013) ............................................................21, 44

*United States* v. *Olofson,*
563 F.3d 652 (7th Cir. 2009) ..................................................................19

*Parsons* v. *Colt's Mfg. Co.,*
2020 WL 1821306 (D. Nev. Apr. 10, 2020) ..........................20, 35, 45

*Prescott* v. *Slide Fire Solutions, LP,*
410 F. Supp. 3d 1123 (D. Nev. 2019) ..................................................41

*Rodriguez* v. *Smith & Wesson Brands, Inc.,*
No. 22-cv-6185 .............................................................................................6

*Rogers* v. *Tyson Foods, Inc.,*
308 F.3d 785 (7th Cir. 2002) ..................................................................43

*Ruppel* v. *CBS Corp.,*
701 F.3d 1176 (7th Cir. 2012) ...........................................12, 13, 14, 17

*Sanchez & Daniels* v. *Koresko,*
503 F.3d 610 (7th Cir. 2007) ..................................................................46

*Sarauer* v. *Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 10,*
966 F.3d 661 (7th Cir. 2020) ..................................................................23

*State of Wis.* v. *Schaffer,*
565 F.2d 961 (7th Cir. 1977) ..................................................................17

*Shapiro* v. *McManus,*
577 U.S. 39 (2015) .....................................................................................40

*Siegel* v. *Shell Oil Co.,*
612 F.3d 932 (7th Cir. 2010) ..................................................................25

*Sig Sauer, Inc.* v. *Brandon,*
826 F.3d 598 (1st Cir. 2016) ..................................................................19

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Simpkins* v. *CSX Transp., Inc.*,
   2012 IL 110662 ............................................................................................27

*Soto* v. *Bushmaster Firearms Int'l, LLC*,
   202 A.3d 262 (Conn. 2019) .........................................................................41

*Steel Co.* v. *Citizens for a Better Env't*,
   523 U.S. 83 (1998)...................................................................................39, 40

*Tenorio* v. *Smith & Wesson Brands, Inc.*,
   No. 22-cv-6186 (Dkt. No. 1-2) ......................................................................6

*Tisdale* v. *Pagourtzis*,
   2020 WL 7170491 (S.D. Tex. Dec. 7, 2020) ...............................................31

*Trahanas* v. *Nw. Univ.*,
   64 F.4th 842 (7th Cir. 2023) ........................................................................28

*Wagner* v. *Bank of Am.*, N.A., 2012 WL 6586347, at *2-3 (S.D. Ill. Dec. 17,
   2012) .............................................................................................................47

*Walton* v. *Bayer Corp.*,
   643 F.3d 994 (7th Cir. 2011) ........................................................................40

*Watson* v. *Philip Morris Cos.*,
   551 U.S. 142 (2007)...............................................................................*passim*

*Webb* v. *Fin. Indus. Regul. Auth., Inc.*,
   889 F.3d 853 (7th Cir. 2018).............................................................23, 34, 35

*Willingham* v. *Morgan*,
   395 U.S. 402 (1969)......................................................................................17

*Young* v. *Bryco Arms*,
   821 N.E.2d 1078 (Ill. 2004) .........................................................................41

**Statutes**

Illinois Consumer Fraud and Deceptive Business Practices Act,
   815 ILCS 505/1, *et seq.* .........................................................................*passim*

Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.*.................25, 26, 33

Administrative Procedure Act, 5 U.S.C. §§ 702, 704 ...............................................43

## TABLE OF AUTHORITIES
(Continued)

**Page(s)**

18 U.S.C. § 923(g)(1)(A) ..............................................................................14

28 U.S.C. § 1331 ..............................................................................5, 8, 9, 10

28 U.S.C. § 1441 ..............................................................................11, 45

28 U.S.C. § 1442 ..............................................................................*passim*

28 U.S.C. § 1446(b)(2)(A) ..............................................................................45, 48

28 U.S.C. § 1447(d) ..............................................................................4

28 U.S.C. § 2284(a) ..............................................................................40

**Other Authorities**

27 C.F.R. §§ 478.123–478.125 ..............................................................................14

15A James W. Moore *et al.*, Moore's Federal Practice § 103.31(4)(g)(ii)
     (3d ed. 2022) ..............................................................................23

Bureau of Alcohol, Tobacco, Firearms and Explosives, National Firearms
     Act Handbook § 7.2.4 ..............................................................................19

**INTRODUCTION**

On the morning of July 4, 2022, as in so many years past, hundreds of families attended the Fourth of July parade in Highland Park, Illinois. Only 20 minutes into the festivities, a man perched on the roof of a local store fired 83 bullets into the crowd from his Smith & Wesson Military and Police ("M&P") 15 semi-automatic rifle. The massacre lasted just one minute, but left seven people dead, dozens more injured, and an entire community in mourning. Plaintiffs are among those grievously harmed.

Facing untold years dealing with serious physical and psychological injuries, the enormous costs associated with medical treatment, rehabilitation, and recovery, and in some cases, lifetimes without their beloved family members, Plaintiffs brought claims in Illinois state court for violations of Illinois consumer protection statutes by Defendants-Appellants Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, and Smith & Wesson, Inc. (together, "Smith & Wesson") for their deceptive and unfair marketing, as well as violations of Illinois state tort law by Smith & Wesson and other defendants. In response, Smith & Wesson removed these cases to federal court, relying on a contorted reading of Plaintiffs' claims and a disingenuous description of its relationship with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

Now, more than a year later, Plaintiffs are still waiting for their day in state court because Smith & Wesson continues to baselessly attempt to manufacture federal jurisdiction when none exists. Smith & Wesson's removal of Plaintiffs' complaints to federal court is nothing more than a ploy to delay the proceedings and avoid litigating in state court.

1

Smith & Wesson argues that the complaints are subject to federal-officer jurisdiction and federal-question jurisdiction, and that the artful pleading doctrine and complete preemption apply to confer federal jurisdiction. All of these arguments are unfounded.  Smith & Wesson is a private company, not a federal officer, and as a matter of established law cannot credibly claim to have been "acting under" a federal officer in aggressively promoting deceptive and unfair marketing campaigns for its firearms to private citizens. Smith & Wesson's attempts to create federal-question jurisdiction and implicate the artful pleading doctrine or a preemption issue are similarly untenable.

The source of Plaintiffs' injuries—the shooting at the 2022 Fourth of July Parade in Highland Park—took place in Illinois, injured Illinois residents, and was the result of numerous violations of Illinois law. Plaintiffs' claims arise exclusively under Illinois law, and Plaintiffs do not advance claims under any federal law. Neither the National Firearms Act ("Firearms Act") nor the Administrative Procedure Act creates a private right of action that displaces Plaintiffs' state-law claims, and therefore cannot operate to completely preempt them. Nor are Plaintiffs attempting to overturn a federal "administrative decision" about the rifle at issue—no such decision or judgment exists. Plaintiffs therefore moved to remand the cases to state court on December 7, 2022.

On September 25, 2023, U.S. District Judge Seeger issued a detailed order granting Plaintiffs' motions and properly remanded the cases to state court—just as federal courts have done in similar actions when private corporations advanced similarly baseless jurisdictional arguments. Citing established precedent from the Supreme Court, this Court, and

other Circuits, the district court thoroughly rejected each of Smith & Wesson's attempts to establish federal jurisdiction. Simply put, there is no federal jurisdiction on any ground, and Plaintiffs are entitled to litigate their state-law claims in state court.

The district court's order should be affirmed.

## STATEMENT OF JURISDICTION

Smith & Wesson's jurisdictional statement is not complete or correct.

The district court did not have subject-matter jurisdiction over the 12 consolidated cases at issue in this appeal, but it did have jurisdiction to determine its own jurisdiction. *See Brownback* v. *King*, 141 S. Ct. 740, 750 (2021) ("[A] federal court always has jurisdiction to determine its own jurisdiction[.]"). After determining that subject-matter jurisdiction was lacking, the district court entered an order remanding these actions to state court on September 25, 2023. Smith & Wesson filed notices of appeal from the remand order in each case on October 16, 2023.

This Court has jurisdiction to hear these appeals pursuant to 28 U.S.C. § 1447(d) because one of Smith & Wesson's claimed bases for federal jurisdiction in each of the consolidated cases was 28 U.S.C. § 1442(a)(1). *See BP P.L.C.* v. *Mayor & City Council of Balt.*, 141 S. Ct. 1532, 1542-43 (2021); *Lu Junhong* v. *Boeing Co.*, 792 F.3d 805, 813 (7th Cir. 2015).

## STATEMENT OF THE ISSUES

1.     Whether the district court correctly determined that it lacked subject-matter jurisdiction under the federal-officer removal statute, 28 U.S.C. § 1442, because Smith & Wesson was not "acting under" federal authority with respect to the conduct challenged in Plaintiffs' complaints.

2.     Whether the district court correctly determined that it lacked federal-question jurisdiction under 28 U.S.C. § 1331 based on an embedded federal question under *Grable & Sons Metal Products., Inc.* v. *Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), because no substantial, disputed issue of federal law is necessarily raised in Plaintiffs' complaints.

3.     Whether the district court correctly determined that it lacked federal-question jurisdiction under 28 U.S.C. § 1331 based on the artful pleading doctrine.

4.     Whether the district court correctly determined that Plaintiffs' claims are not preempted by federal regulations or statutes.

5.     Whether Smith & Wesson's failure to obtain consent from all Defendants also foreclosed removal.

## STATEMENT OF THE CASE

A.    **Plaintiffs Were Harmed by the Tragic Shooting in Highland Park, Illinois**

This appeal arises out of twelve substantially similar state-court cases filed following the tragic and deadly shooting in Highland Park, on July 4, 2022. Plaintiffs are victims of the shooting and their family members. They include individuals who were shot on that Fourth of July or who watched as their loved ones were wounded that day. C.R., an eight-year-old boy, was shot in the back, paralyzing him below the waist and changing his life forever. SA-2–3 (*Roberts* Compl.[1] (hereafter referred to as the "Complaint") ¶ 5). His brother L.R. was hit with shrapnel, and their mother, Keely Roberts, was shot in the foot. SA-7 (Complaint ¶¶ 19, 149). Elizabeth Turnipseed was shot in her pelvis while standing next to her husband and three-year-old child. SA-73 (*Turnipseed* Compl.[2] ¶ 3). Sylvia Vergara, who found cover but then ran back into the gunfire to rescue her family members, was shot in the leg. *Vergara* Compl.[3] ¶ 2. Michael Zeifert, lying on top of his children to shield them, was shot in the chest. *Zeifert* Compl.[4] ¶ 2. Nicolas Toledo, visiting his family

---

[1]    *See* Complaint, *Roberts* v. *Smith & Wesson Brands, Inc.*, No. 22-cv-6169 (Dkt. No. 1-2) ("*Roberts* Complaint").

[2]    *See* Complaint, *Turnipseed* v. *Smith & Wesson Brands, Inc.*, No. 22-cv-6359 (Dkt. No. 1-2) ("*Turnipseed* Complaint").

[3]    *See* Complaint, *Vergara* v. *Smith & Wesson Brands, Inc.*, No. 22-cv-6190 (Dkt. No. 1-2) ("*Vergara* Complaint").

[4]    *See* Complaint, *Zeifert* v. *Smith & Wesson Brands, Inc.*, No. 22-cv-6193 (Dkt. No. 1-2) ("*Zeifert* Complaint").

for the holiday, was shot and killed. *Toledo* Compl.[5] ¶ 16. Other Plaintiffs sustained similarly serious injuries or lost their lives.

### B.    Plaintiffs Filed Their State-Law Claims in State Court

On September 27 and 28, 2022, Plaintiffs filed lawsuits in Illinois state court.[6] Plaintiffs' complaints assert quintessential state-law claims against Smith & Wesson, a firearm manufacturer whose products are sold across the nation, and which manufactured the M&P rifle that was used in the Highland Park shooting. *E.g.*, S.A. 7–9 (Compl.  ¶¶ 3, 5–9); S.A. 85 (*Turnipseed* Compl. ¶ 40).[7] Plaintiffs also raise certain state-law claims against other defendants—Budsgunshop.com, LLC, Red Dot Arms, Inc., Robert Crimo Jr., and Robert Crimo, III (the "Shooter")—which are not at issue here.[8] Plaintiffs do not advance claims

---

[5]    *See* Complaint, *Toledo* v. *Smith & Wesson Brands, Inc.*, No. 22-cv-6191 (Dkt. No. 1-2) ("*Toledo* Complaint").

[6]    *See Roberts Complaint; Turnipseed Complaint; Vergara Complaint; Zeifert Complaint;* Complaint, *Tenorio* v. *Smith & Wesson Brands, Inc.*, No. 22-cv-6186 (Dkt. No. 1-2); Complaint, *Bennett* v. *Smith & Wesson Brands, Inc.*, No. 22-cv-6171 (Dkt. No. 1-2); Complaint, *Rodriguez* v. *Smith & Wesson Brands, Inc.*, No. 22-cv-6185; Complaint, *Sedano* v. *Smith & Wesson Brands, Inc.*, No. 22-cv-6183 (Dkt. No. 1-2); Complaint, *Straus ex rel. Straus* v. *Smith & Wesson Brands, Inc.*, No. 22-cv-6181 (Dkt. No. 1-2); Complaint, *Sundheim ex rel. Sundheim* v. *Smith & Wesson Brands, Inc.*, No. 22-cv-6178 (Dkt. No. 1-2); Complaint, *Chupack* v. *Smith & Wesson Brands, Inc.*, No. 22-cv-6361 (Dkt. No. 1-2).

[7]    Upon Smith & Wesson's removal of all twelve cases to federal district court, Judge Seeger consolidated the cases and designated the *Roberts* case as the lead case. No. 22-cv-6169 (Dkt. No. 30). In its order to remand, the district court analyzed and cited to the *Roberts* Complaint. *See, e.g.*, A-3. As such, references in this brief to the "Complaint" in the singular refer to the *Roberts* Complaint.

[8]    *See, e.g.*, Complaint ¶¶ 246–68 (Count V – Negligence as to Budsgunshop.com, LLC and Red Dot Arms, Inc.); ¶¶ 269–84 (Count VI – Aiding & Abetting as to Budsgunshop.com, LLC and Red Dot Arms, Inc.); ¶¶ 285–303 (Count VII – Negligence as to Robert Crimo

under any federal statute, nor do they challenge any federal regulations or administrative decisions.

Among other things, Plaintiffs allege that, for years, Smith & Wesson has engaged in deceptive and unfair marketing in violation of Illinois consumer protection laws by targeting advertising for its assault rifles toward impulsive, risk-taking civilian young men and creating advertisements in the style of first-person shooter video games to appeal to young men's adrenaline-seeking propensities. Smith & Wesson also misleadingly markets its M&P rifles as closely associated with and/or endorsed by the military and law enforcement. S.A. 19–23 (Compl. ¶¶ 68–80). Plaintiffs have alleged that such marketing was a substantial and foreseeable factor leading to the mass shooting in which Plaintiffs were injured. A-34. Plaintiffs also allege that Smith & Wesson negligently marketed its firearms, and they assert claims for intentional and negligent infliction of emotional distress against all defendants, including Smith & Wesson. A-41-43. Plaintiffs seek judgment, compensation, and other appropriate relief for all of these harms.

**C.     Smith & Wesson Removed the Cases to Federal Court**

Smith & Wesson removed all twelve cases to federal court, asserting four grounds for federal jurisdiction: (1) 28 U.S.C. § 1442(a) federal-officer jurisdiction, because Smith & Wesson operated as a federal officer by virtue of a purported "partnership between firearm

---

Jr.); ¶¶ 304–10 (Count VIII – Battery as to Robert Crimo III); ¶¶ 311–18 (Count IX – Assault as to Robert Crimo III).

manufacturers and the ATF"; (2) 28 U.S.C. § 1331 federal-question jurisdiction, as Plaintiffs' claims necessarily raise disputed and substantial issues of federal law that must be adjudicated in a federal forum; (3) the artful pleading doctrine justifies removal; and (4) Plaintiffs' claims are completely preempted by a combination of the Administrative Procedure Act and the National Firearms Act. *See* A-9.

### D.    The District Court Granted Plaintiffs' Motions to Remand

Plaintiffs in all twelve state-court actions timely moved to remand. A-2. The district court consolidated the cases for purposes of resolving the motions. A-7.

On September 25, 2023, the district court granted the consolidated motion to remand. A-2. The district court rejected each of Smith & Wesson's arguments, finding that: (1) there was no federal-officer jurisdiction under Section 1442(a) because Smith & Wesson was not acting under a federal officer in complying with certain federal agency requirements; (2) there was no federal-question jurisdiction under § 1331 because Plaintiffs' state-law claims do not necessarily raise a federal issue; (3) the artful pleading doctrine did not apply because Plaintiffs' claims are not federal claims in "disguise"; and (4) Plaintiffs' claims were not completely preempted because the Firearms Act does not create a private right of action and does not include a clear congressional intent to completely preempt state law. A-21, A-43, A-51.

Smith & Wesson now appeals.

## SUMMARY OF ARGUMENT

Smith & Wesson's argument for federal jurisdiction is based on a wholesale—and disingenuous—rewriting of Plaintiffs' complaints. The Court should not credit Smith & Wesson's revisionist history. Plaintiffs' complaints assert classic state-law claims, not federal claims. Smith & Wesson nevertheless attempted to fabricate a basis for federal jurisdiction out of the complaints' sparse references to the Firearms Act.[9] Plaintiffs' allegations that Smith & Wesson violated the Firearms Act are not fundamental to Plaintiffs' claims. Smith & Wesson can be found to have violated one or more Illinois consumer protection statutes, and to have violated one or more duties of care with or without a finding that Smith & Wesson violated the Firearms Act. Accordingly, the district court properly rejected Smith & Wesson's effort to recast Plaintiffs' state-law claims as implicating issues of federal law.

*First*, the district court lacked federal-officer jurisdiction under 28 U.S.C. § 1442(a). Private companies seeking removal under § 1442 bear a "special burden" to establish that the conduct that caused Plaintiffs' injuries was mandated by a federal officer's "subjection, guidance, or control." *Watson* v. *Philip Morris Cos.*, 551 U.S. 142, 151 (2007). None of the interactions with the federal government on which Smith & Wesson relies even approaches

---

[9]     Of the more than 300 paragraphs in the *Roberts* Complaint, just fourteen (only nine of which are unique) mention the Firearms Act. SA-45 (Compl. ¶¶ 168, 174), SA-48 (Compl. ¶¶ 189–191), SA-52 (Compl. ¶¶ 212–14), SA-55 (Compl. ¶ 238), SA-56 (Compl. ¶ 240–41), SA-59 (Compl. ¶¶ 261, 263–64). The *Turnipseed* Complaint includes only eleven paragraphs that mention the Firearms Act. SA-96 (Compl. ¶¶ 87, 89), SA-97 (Compl. ¶ 92), SA-113-15 (Compl. ¶¶ 174–75, 184, 186–87), SA-117 (Compl. ¶¶ 203, 205-06), SA-118 (Compl. ¶ 206).

the "unusually close" oversight necessary to trigger federal jurisdiction. *Id.* at 153. Further, Smith & Wesson's actions that caused Plaintiffs' injuries were not controlled or directed by federal officers. Smith & Wesson's core contention that simply abiding by a federal regulatory scheme or engaging with a federal agency qualifies it as an agent of the federal government is precluded under *Watson*.

*Second*, the district court lacked federal-question jurisdiction pursuant to 28 U.S.C. § 1331 under *Grable*, 545 U.S. at 313-14. No substantial federal issues are necessarily raised or actually disputed in Plaintiffs' complaints, and stripping the state courts of jurisdiction over the claims asserted here would disrupt the federal-state balance established by Congress. *See Grable*, 545 U.S. at 314.

*Third*, the artful pleading doctrine cannot supply federal jurisdiction here. The artful pleading doctrine applies only where a plaintiff has "disguised" federal claims as state-law claims. But Plaintiffs bring straightforward claims for Smith & Wesson's violation of Illinois state statutes and Illinois common law. This case does not present federal claims or necessarily raise any federal issue, and Plaintiffs' claims are not federal claims in disguise.

*Fourth*, Plaintiffs' claims are not completely preempted by the Firearms Act or Administrative Procedure Act. No court anywhere has held that the Firearms Act completely preempts state law or that the Firearms Act and Administrative Procedure Act work in concert to do so. The text and structure of the statutes confirm that Congress did not intend for them to preempt state law.

11

*Fifth*, Smith & Wesson is not permitted to remove Plaintiffs' complaints on federal-question grounds because Smith & Wesson failed to obtain the consent of all defendants for removal, as required under 28 U.S.C. § 1441.

The Court should affirm the district court's decision.

## ARGUMENT

## I.     The District Court Correctly Rejected Federal-Officer Removal

While remand orders are not ordinarily appealable, Smith & Wesson manufactured an appeal right here by making a baseless assertion that it is a federal officer. "Federal officer removal is proper when the defendant (1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense." *Betzner* v. *Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018). All four elements are "requirements" for federal jurisdiction under 28 U.S.C. § 1442(a). *Ruppel* v. *CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012).

Smith & Wesson fails to demonstrate that it meets the second required element, and thus the inquiry ends. Its contention in support of jurisdiction boils down to one that this Court and the Supreme Court have uniformly rejected: that it is a federal officer because it follows federal regulations. But a private company does not "act under" a federal agency or officer by adhering to federal regulations. And, even if compliance with federal regulations provided a basis for federal-officer removal in general, Smith & Wesson was not "acting under" a federal officer or agent in specific regards to the marketing and advertising activities to private consumers that form the basis of the complaints. In fact, Smith & Wesson

12

does not point to any federal regulation targeting its marketing or advertising activities because no such regulation exists. The main "regulation" that Smith & Wesson points to is, in fact, a classification letter written to a different gun company (Colt) about a different gun (Model R6000, the AR-15 Sporter) in the 1960s *unrelated to advertising or marketing*. Contrary to Smith & Wesson's contention, there is no reason to believe that a decision in this case will have any impact on the federal government's ability to regulate firearms. Because Smith & Wesson's assertion of federal-officer jurisdiction lacks any legal or factual underpinning, it should be rejected.

### A.    Regulated Businesses Are Not Federal Officers

Smith & Wesson's primary argument is that its participation in a so-called "federal firearms partnership" with the ATF is the equivalent of "acting under" a federal agency. App. Br. at 19. But when Smith & Wesson explains the nature of this relationship, it says merely that "[c]ertain government functions are delegated to manufacturers (e.g., tracing crime guns, collecting certain taxes, and maintaining registration and transfer records)." *Id.* at 19–20. According to Smith & Wesson, those functions mean that it was acting as a federal officer when it advertised the deadly weapon that harmed Plaintiffs.

Most obviously, those purported government functions do not control how Smith & Wesson marketed and advertised its M&P 15 rifle. Plaintiffs' complaints allege violations of state consumer protection statutes and negligence based on Smith & Wesson's deceptive marketing practices. Smith & Wesson does not argue that its marketing and advertising

practices were "delegated government functions"—nor could it. The concept of "acting un-der" in the federal-officer statute is designed to "cover[] situations . . . where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete." *Ruppel*, 701 F.3d at 1181. The federal government is not using Smith & Wesson to advertise, market, or sell firearms to private citizens, and if Smith & Wesson did not do so, federal government agents would not.

Setting aside that Smith & Wesson cannot connect these purportedly "delegated" functions to the underlying conduct at issue in this case, those functions are insufficient to create federal-officer jurisdiction anyway. "Delegation" in the federal officer context re-quires more than a manufacturer in a heavily regulated industry determining how it would comply with those regulations. *See Lu Junhong*, 792 F.3d at 810. Smith & Wesson does not allege (because it cannot) that it has the power "to make rules"—it only "interpret[s] and appl[ies]" the ATF's rules "as best as it can." *Id.* Nor does Smith & Wesson suggest that it is involved in building or making something that the government needs via a government contract or otherwise. *See, e.g.*, *Ruppel*, 701 F.3d at 1181 ("[The private entity] worked hand-in-hand with the government, assisting the federal government in building war-ships."); *Betzner*, 910 F.3d at 1015 (plaintiff worked for government contractor that "man-ufacture[d] heavy bomber aircraft for the United States Air Force," "act[ing] under the military's detailed and ongoing control").

Instead, Smith & Wesson identifies a federal statute and corresponding regulations that it has to comply with. App. Br. at 19–20. But "it has been understood for a long time

14

that regulation does not turn a private entity into a public actor," *Martin* v. *Petersen Health Operations, LLC*, 37 F.4th 1210, 1212–13 (7th Cir. 2022), and that "the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law," *Watson*, 551 U.S. at 152 (emphasis in original). "[T]hat is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.* at 153.

The federal statutes and regulations that Smith & Wesson identifies do not make anyone into a federal officer. App. Br. at 20 (identifying 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. §§ 478.123–478.125 as functions delegated to manufacturers). They are statutes and regulations setting out recordkeeping rules that firearms manufacturers must follow. *See, e.g.,* 18 U.S.C. § 923(g)(1)(A) (requiring licensed firearms manufacturers to "maintain such records of important, production, shipment, receipt, sale or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe."). This Court and the Supreme Court have conclusively rejected similar attempts to transform a regulated entity into a government actor for the purpose of manufacturing federal-officer jurisdiction. *See, e.g.*, *Watson*, 551 U.S. at 152 ("Taxpayers who fill out complex federal tax forms, airline passengers who obey federal regulations prohibiting smoking, for that matter well-behaved federal prisoners, all 'help' or 'assist' federal law enforcement authorities in some sense of those words. But that is not the sense of "help" or 'assist' that can bring a private action within the scope of this stat-

ute."); *Lu Junhong*, 792 F.3d at 809 (explaining that safety inspection and certification requirements imposed on airplane manufacturers do not make regulated entities federal officers, even if manufacturer's employees conduct required inspections and certify compliance); *Martin*, 37 F.4th at 1212–13 (rejecting assertion that federal regulation of nursing home during COVID-19 pandemic turned nursing home into federal officer).

The wealth of binding authority on this point leaves Smith & Wesson with little more to lean on than the ATF's use of the word "partnership" to describe the relationship between firearm manufacturers and the agency. However, the ATF used that term in a nearly 20-year-old letter warning federal firearms licensees about the "need to *comply with all Federal laws and regulations* that govern your firearms business." A-19–20.  In other words: the purported partnership has precisely the set of characteristics courts have found insufficient to demonstrate that an entity is a federal officer, even if "sometimes an English speaker might say that one who complies with the law 'helps' or 'assists' governmental law enforcement." *See Watson*, 551 U.S. at 152. The ATF's use of the word "partnership" was no more than a figure of speech, and "[a] figure of speech does not make someone a federal officer or a person 'acting under' one." *Lu Junhong*, 792 F.3d at 808-09.

In sum, "[w]hat is true about cigarette and airframe manufacturers is true about nursing homes" and is true about firearms manufacturers: "Private firms retain their private character even when many aspects of their conduct are controlled by federal statutes

and rules." *Martin*, 37 F.4th at 1213. Smith & Wesson's assertion of federal-officer juris-
diction based on the regulations it is required to comply with amounts to nothing more than
a rehash of this long-rejected premise.

### B.     There Is No "Federal Interests" Exception to the Statutory Require-ments Governing Federal-Officer Jurisdiction

For the first time on appeal, Smith & Wesson concocts a new theory that federal-
officer removal is justified here because of the "enormous federal interests implicated by
[Plaintiffs'] allegations." App. Br. at 21. It argues that Plaintiffs' claims should be deemed
to have been asserted "against or directed to" the ATF because one theory asserted in
Plaintiffs' Complaint involves allegations regarding the classification of the M&P 15 rifle
under federal law. *Id*. at 21-22. That argument is flawed at every turn.

As an initial matter, this is a thinly veiled attempt to muddy the waters and import
*federal question* removal justifications into the federal-officer removal inquiry, despite the
fact that federal-officer removal does not turn on such other justifications. As discussed in
Section II.B.2, *infra*, Plaintiffs' claims do not depend upon resolution of a substantial ques-
tion of federal law (as required for federal-question jurisdiction to exist under *Grable*), and
they are not preempted by federal law (as required for application of the complete preemp-
tion doctrine).

The point of the federal-officer statute is to permit removal of a case that would oth-
erwise not be removable *if the statutory requirements are met*. *See Ruppel*, 701 F.3d at
1180. If a private defendant cannot show the appropriate relationship to demonstrate that
it is "acting under a federal officer or agency," then the statutory requirements are not met,

and it is irrelevant to the federal-officer inquiry whether federal interests or regulations are involved in the case. *See Watson*, 551 U.S. at 151-52 (alterations and quotation marks omitted); *see also Lu Junhong*, 792 F.3d at 809 ("[I]f following federal rules allowed litigation in federal court, then all food and drug suits, and many others too, would be removable.").[10]

Even if the legal argument were somehow valid, it falls apart on the facts. Smith & Wesson argues that federal-officer removal exists because Plaintiffs' claims are a "vehicle to challenge an administrative decision" by the ATF. App. Br. at 13. Its argument depends on the premise that the ATF made an administrative judgment that the M&P 15 rifle is not

---

[10]   The existence of a federal defense is relevant to the federal-officer jurisdiction statute because "it is the raising of a federal question in the officer's removal petition that constitutes the federal law under which the action against the federal officer arises for Art. III purposes." *Mesa* v. *California*, 489 U.S. 121, 136 (1989). That does nothing to change the "the central and grave concern of the statute," which "is that a Federal officer or agent shall not be forced to answer for conduct assertedly within his duties in any but a Federal forum." *State of Wis.* v. *Schaffer*, 565 F.2d 961, 963–64 (7th Cir. 1977). The cases that Smith & Wesson relies upon do not replace this long-standing purpose with a more generalized rule about avoiding interference with federal regulations. Rather, the vast majority of these suits are against *actual* federal officers. *See id.* at 962 (subpoena and threatened contempt action against U.S. attorney); *Dugan* v. *Rank*, 372 U.S. 609, 610–11, 615 (1963) (suit against officials of the U.S. Department of the Interior); *Nationwide Invs.* v. *Miller*, 793 F.2d 1044, 1045 (9th Cir. 1986) (compelled testimony with threat of contempt of federal officer); *Willingham* v. *Morgan*, 395 U.S. 402, 403 (1969) (suit against warden of federal prison); *Arizona* v. *Manypenny*, 451 U.S. 232, 234-35 (1981) (criminal prosecution of Border Patrol Agent in the U.S. Immigration and Naturalization Service); *Cook* v. *Peter Kiewit Sons Co.*, 775 F.2d 1030, 1032–34 (9th Cir. 1985) (suit against attorney representing United States); *Bosaw* v. *Nat'l Treasury Emps' Union*, 887 F. Supp. 1199, 1207-08 (S.D. Ind. 1995) (subpoena against IRS officers); *Ferrell* v. *Yarberry*, 848 F. Supp. 121, 123 (E.D. Ark. 1994) (subpoena for testimony of U.S. Department of Agriculture employees). And another—a suit against a state entity related to actions it took to support a federal agency in an investigation as required by federal law—involves actions taken at the direct behest of a federal agency. *Miami Herald Media Co.* v. *Fl. Dep't of Transp.*, 345 F. Supp. 3d 1349, 1356 (N.D. Fla. 2018).

a machinegun and that Plaintiffs are necessarily trying to challenge that judgment. The rest of its arguments about supposed interference with the functions of the ATF rely on the premise that the ATF has, in fact, officially ruled on this topic.

In fact, the ATF has never issued an administrative decision on whether the M&P 15 is a machinegun. And the only evidence Smith & Wesson offers of an administrative decision is a letter written by ATF's predecessor agency in December 1963—*sixty* years ago—addressed to Colt, a *different* firearms manufacturing company, evaluating a prototype of a *different* AR-15 style weapon. *See* App. Br. at 22 (citing Dkt. 48-7 ("Colt Letter")). The Colt Letter evaluates specifications of that *specific* firearm, namely the location of pivot pin holes in the upper and lower receiver. Colt Letter at 4. It concludes with a classification determination for that specific firearm—and no other. *Id.* The Colt Letter does not state that every AR-15-style weapon is not a machinegun, contrary to Smith & Wesson's assertion. *See* App. Br. at 22; *see also United States* v. *Olofson*, 563 F.3d 652, 659 (7th Cir. 2009) (upholding jury verdict that Colt AR-15-style rifle was a machinegun). [11]

---

[11]  Smith & Wesson seems not to understand how the ATF determines whether a firearm is a machinegun, but the process is quite clear. While "there is no requirement for a manufacturer to seek an ATF classification of its product prior to manufacture[,] *[n]evertheless, a firearms manufacturer is well advised to seek an ATF classification* before going to the trouble and expense of producing it." ATF Handbook § 7.2.4 (emphasis added); *see also Sig Sauer, Inc.* v. *Brandon*, 826 F.3d 598, 599-600 (1st Cir. 2016). The onus is on the *manufacturer* to make sure it is not unintentionally producing a machinegun. *See* ATF Handbook § 7.2.4.1. A classification letter sets forth "the agency's official position concerning the status of the firearms under Federal firearms laws." *Brandon*, 826 F.3d at 600 (citing ATF Handbook § 7.2.4.1). Only the recipient may rely on a classification letter, ATF Handbook § 7.2.4.1. The ATF has not issued a decision that speaks to whether the M&P 15 fits the statutory definition of a machinegun—a decision that Smith & Wesson is empowered to request.

Contrary to Smith & Wesson's contention, a decision on the merits against Smith & Wesson regarding its marketing and advertising practices would not interfere with the ATF's operations or authority, nor would a judgment for Plaintiffs on their alternative theory about the classification of the M&P rifle impact the validity of the Firearms Act or any of its implementing regulations. *See* App. Br. at 15–16. Conspicuously absent from Smith & Wesson's brief is an acknowledgment that multiple courts have allowed claims to proceed where plaintiffs advance the theory that either a Smith & Wesson M&P 15 rifle like the one at issue here or other AR-15-style firearms were properly classified as machineguns.[12] Supp. App. 3–4 (*Goldstein* v. *Earnest*, No. 37-2020-00016638-CU-PO-CTL, at 3–4 (Ca. Super. Ct. July 2, 2021), pet. for writ denied (Ca. Ct. App. Sep. 14, 2021)) (involving Smith & Wesson M&P 15); *see also Parsons* v. *Colt's Mfg. Co.*, 2020 WL 1821306, at \*11–\*16 (D. Nev. Apr. 10, 2020) (accepting that certain AR-15-style firearms from other manufacturers may fit federal definition of machineguns), *dismissed on other grounds*, 499 P.3d 602 (Nev. 2021).

Reduced to its essence, Smith & Wesson's second argument in favor of federal-officer removal is not about federal-officer removal at all. It is an attempt to argue that *other* justifications for federal jurisdiction apply, *i.e.*, that Plaintiffs' cases involve an embedded federal question or that the field of firearms law has been completely preempted by federal

---

[12] The complaints, as well as Smith & Wesson's Opening Brief, use the term of art "NFA weapon" and "machinegun" interchangeably. *See* App. Br at 27. As Smith & Wesson notes, "NFA weapon" is a functionally equivalent term to "machinegun." *Id.* For the sake of clarity and consistency, Plaintiffs use only the term "machinegun" here.

law. As addressed in Sections II.B and II.D, Smith & Wesson is wrong on the merits of both

of those arguments. And it is wrong that federal-officer removal is justified here.

*      *      *

The district court found that Smith & Wesson's federal-officer removal argument

was one that "[f]rom the get-go . . . runs into trouble," A-15, and ultimately "goes nowhere,"

A-17. This Court should do the same.

## II.    The District Court Properly Denied Federal-Question Jurisdiction

### A.    Removal Is Governed by the Well-Pleaded Complaint Rule

The "presence or absence of federal-question jurisdiction is governed by the 'well-

pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal

question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar,*

*Inc.* v. *Williams*, 482 U.S. 386, 392 (1987). The rule "makes the plaintiff the master of the

claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Here,

Plaintiffs, as masters of their claims, have relied on state law and are entitled to the benefit

of that choice.

Smith & Wesson argues that three exceptions to the well-pleaded complaint rule are

relevant here, but none applies, as explained below.

*First* is the "embedded federal question" doctrine under *Grable*, 545 U.S. 308, which

arises when a substantial federal question is necessarily raised and actually disputed on the

face of the plaintiff's complaint, and the balance of federal-state responsibility favors the

case being heard in a federal forum. Here, none of Plaintiffs' well-pleaded state-law claims

21

presents "embedded" federal issues, because none requires proof of any federal law issue as a necessary element. *See infra* Section II.B; *see Grable*, 545 U.S. at 313–14; *Franchise Tax Bd. of Cal.* v. *Constr. Laborers Vacations Tr. for S. Cal.*, 463 U.S. 1, 13 (1983).

*Second* is the "artful pleading doctrine," sometimes considered an alternate label for complete preemption, under which a "plaintiff may not frame his action under state law and omit federal questions that are essential to recovery." *Burda* v. *M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir. 1992); *see infra* Section II.C.

*Third* is the doctrine of complete preemption, a rare doctrine that applies only where state-law claims fall within the scope of federal statutes intended by Congress to displace all state law completely. *See infra* Section II.D; *Ne. Rural Elec. Membership Corp.* v. *Wabash Valley Power Ass'n, Inc.*, 707 F.3d 883, 894 (7th Cir. 2013), as amended (Apr. 29, 2013) (emphasis added).

### B.     Smith & Wesson Fails to Establish *Grable* Jurisdiction Based on an Embedded Federal Question

Plaintiffs' complaints assert quintessential state-law causes of action against Smith & Wesson—statutory consumer fraud claims, and common-law tort claims. Under *Grable*, federal jurisdiction exists over a wholly state-law complaint where it contains an "embedded" federal issue that is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn* v. *Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 313–14). If the "most one can say is that a question of federal law is lurking in the background," state-law claims do not arise under federal law and removal is improper. *Buethe*

v. *Britt Airlines, Inc.*, 749 F.2d 1235, 1239 (7th Cir. 1984) (quoting *Gully* v. *First Nat'l Bank*, 299 U.S. 109, 117 (1936)). This doctrine applies only to claims that "really and substantially involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law." *Grable*, 545 U.S. at 313.

This category of cases is "special and small." *Gunn*, 568 U.S. at 258 (citations omitted). The exercise of *Grable* jurisdiction is a "rare circumstance" in this Circuit. *East Cent. Ill. Pipe Trades Health & Welfare Fund* v. *Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 959 (7th Cir. 2021). As this Court has explained, the "existence of a federal issue" embedded in a state-law claim "rarely allows removal." *Hartland Lakeside Joint No. 3 Sch. Dist.* v. *WEA Ins. Corp.*, 756 F.3d 1032, 1035 (7th Cir. 2014). Indeed, the "Seventh Circuit has adopted a narrow interpretation of *Grable*." *Giles* v. *Chi. Drum, Inc.*, 631 F. Supp. 2d 981, 985 (N.D. Ill. 2009).

Here, Smith & Wesson's invocation of *Grable* dramatically overreads the scope of federal jurisdiction over state-law complaints and misconstrues the relief Plaintiffs seek. While Smith & Wesson's failure to meet any one of the *Grable* factors would require remand, *Gunn*, 568 U.S. at 258, it meets *none* of them here.

### 1.    No Federal Issue Is Necessarily Raised or Actually Disputed

Plaintiffs' complaints do not "necessarily raise" any issue of federal law. "To be 'necessarily raised' for purposes of federal-question jurisdiction, the answer to the federal question must be an essential element of the state cause of action. If the case can be resolved without reaching the federal issue, the federal question is not necessarily raised." 15A

James W. Moore *et al.*, Moore's Federal Practice § 103.31(4)(g)(ii) (3d ed. 2022). A state-law claim raises a federal issue "only if" an issue of federal law must be resolved. *Sarauer* v. *Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 10*, 966 F.3d 661, 674 (7th Cir. 2020). In other words, it must be "impossible to decide" the state-law claim without deciding an issue of federal law. *Hartland Lakeside*, 756 F.3d at 1035. A well-pleaded state-law cause of action does not "arise under" federal law for removal purposes unless the affirmative case "will necessarily require application" of federal law such that the plaintiff cannot meet its *prima facie* burden without relying on a federal standard. *Gunn*, 586 U.S. at 258. And if there is no federal issue "necessarily raised" for purposes of the first *Grable* factor, then there is no federal issue "actually disputed" as per the second. As this Court has held, "an issue not [necessarily] raised cannot be actually disputed." *Webb* v. *Fin. Indus. Regul. Auth., Inc.*, 889 F.3d 853, 861 (7th Cir. 2018).

Here, Plaintiffs' state-law causes of action can all be resolved without applying federal law. As an initial matter, there is no element of Plaintiffs' claims that makes "[d]eciding an issue of federal law . . . inescapable." *Hartland Lakeside*, 756 F.3d at 1035. Plaintiffs assert that Smith & Wesson violated Illinois consumer protection laws and acted negligently by engaging in deceptive and unfair marketing practices targeting young men prone to violence. Those claims and the allegations that support them can be decided by reference to Illinois state law and do not necessarily present federal issues.

Moreover, while Plaintiffs' complaints contain some references to certain federal standards and allegations that Smith & Wesson violated federal law in the manufacture,

24

transfer, and sale of the M&P rifle, these allegations merely serve to supply support for one of several alternative theories that would satisfy Plaintiffs' state-law claims. As the district court noted, "[t]he fact that the complaint points to federal law is not enough to establish federal question jurisdiction. It depends on the substance of the claims." A-32 (citing *Merrill Lynch* v. *Manning*, 578 U.S. 374, 381 (2016)). And here there is no federal substance to the claims; "[a] close look at the complaint confirms that the claims do not 'necessarily raise' a federal question.'" A-32.

(a)     Plaintiffs' Statutory Claims Do Not Necessarily Raise Federal Issues

Plaintiffs bring statutory claims against Smith & Wesson under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1, *et seq.*, and under Section 2(a), subparagraphs 2, 5, 7, and 12 of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510 ("Deceptive Trade Practices Act").

"The elements of a claim under the [Consumer Fraud Act] are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Leszanczuk* v. *Carrington Mortg. Servs., LLC*, 21 F.4th 933, 940 (7th Cir. 2021) (citation and quotation marks omitted). "[A] plaintiff must [also] demonstrate that the defendant's conduct is the proximate cause of the injury." *Siegel* v. *Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010).

As for the Deceptive Trade Practices Act, Section 2(a) provides that "(a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation,

or occupation, the person: . . . (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; . . . (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; . . . (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . or (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 Ill. Comp. Stat. Ann. 510/2.

None of the elements of these prototypical state statutory claims requires application or interpretation of federal law. And as the district court properly held, although the allegations Plaintiffs make in support of their Consumer Fraud Act and Deceptive Trade Practices Act claims "include[] references to federal law, here and there, . . . [a] jury could decide the statutory claims without reaching any question of federal law." A-33.

In other words, answering a federal question—such as whether Smith & Wesson violated the Firearms Act—is not "necessary" or unavoidable here, because Plaintiffs' statutory claims are supported by ample factual allegations unrelated to any federal issue. For instance, with respect to the unfairness claim under the Consumer Fraud Act, Plaintiffs allege that (1) "Smith & Wesson sells and promotes its line of assault rifles, which are designed for military and law enforcement personnel, by intentionally and unfairly targeting the propensity of young men for risk-taking, impulsive behavior"; (2) Smith & Wesson promised "young civilian men that these assault rifles will offer 'more adrenaline'";

26

(3) Smith & Wesson "models its marketing videos after first-person shooter games despite the risk that a certain subset of young men who play these games will want to act them out in real life"; (4) Smith & Wesson uses "social media posts that harness images and themes popular among young people like first-person shooter games" and social media "influencers" to market to "young civilian consumers"; and (5) this "unfair marketing was a substantial and foreseeable factor in causing the Shooter to select and utilize the M&P rifle to try to live out his obsession with violence." S.A. 44 (Compl. ¶¶ 161, 163, 164–67).

Similarly, with respect to Plaintiffs' claims of deceptive conduct, the complaints allege that: (1) Smith & Wesson "associate[d] its line of M&P rifles with United States military personnel to create the false impression that its products were utilized and/or endorsed by reputable users, and to target a class of consumers at particular risk to use assault rifles for mass shootings"; and (2) Smith & Wesson's marketing "impliedly misrepresented and overstated that the U.S. military endorses or uses Smith & Wesson's M&P assault rifles, causing a likelihood of confusion and misunderstanding as to any military sponsorship, use, or approval of the company's M&P rifles." S.A. 47–48, 51 (Compl. ¶¶ 182, 187, 209–11).

Considering the primacy and breadth of these non-federal allegations, the district court correctly observed that "[t]he complaint offers many reasons why Smith & Wesson violated the state statutes, and many of those reasons have nothing to do with federal law." A-34. Indeed, "[a] jury doesn't need to decide a federal question" to resolve Plaintiffs' statutory claims, "and the mere *possibility* of addressing federal law is not enough to blaze a path to the federal courthouse." *Id.* (emphasis added). A federal question therefore is not

embedded in the statutory claims under *Grable*, because answering a federal question is not unavoidable.

    (b)    <u>Plaintiffs' Common-Law Tort Claims Do Not Necessarily Raise Federal Issues</u>

The analysis is largely the same for Plaintiffs' common-law tort claims against Smith & Wesson for negligence and for negligent and intentional infliction of emotional distress.

The elements of a negligence claim are familiar: "a duty of care owed by the defendant to the plaintiff, breach of that duty, and an injury proximately caused by that breach." *Simpkins* v. *CSX Transp., Inc.*, 2012 IL 110662, ¶ 14 (citation omitted). And the elements of an intentional infliction of emotional distress claim under Illinois law are: (1) the defendant's conduct was in fact extreme and outrageous; (2) the defendant intended to cause severe emotional distress or know that there was a high probability that his conduct would do so; and (3) the conduct in fact caused severe emotional distress. *Cairel* v. *Alderden*, 821 F.3d 823, 835 (7th Cir. 2016) (citing *Feltmeier* v. *Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)).[13] "To qualify as outrageous, the conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Trahanas* v. *Nw. Univ.*, 64 F.4th 842, 859 (7th Cir. 2023) (quotation marks omitted).

As with Plaintiffs' statutory claims, none of the elements of Plaintiffs' common-law tort claims "necessarily" requires application or interpretation of federal law, and Plaintiffs'

---

[13]    A negligent infliction of emotional distress claim is a negligence claim with the additional requirement that the plaintiff was a direct victim of the negligent conduct or a bystander. *Barnes* v. *Anyanwu*, 391 F. App'x 549, 552 (7th Cir. 2010).

allegations do not contain an embedded federal question. As an initial matter, Plaintiffs' emotional distress claims are not specifically supported by *any* specific allegation that re- fers to federal law. *See* S.A. 68–70 (Compl. ¶¶ 319–36). Smith & Wesson does not argue otherwise. *See* App. Br. at 6–7 (noting only that Plaintiffs' emotional distress claims "are supported by incorporating all of the 'the foregoing allegations' of the Complaint'").

As for Plaintiffs' negligence claim, Plaintiffs proffer several state-law theories sup- porting liability, meaning deciding issues of federal law is far from "inescapable" for the purposes of resolving these claims. As the district court correctly observed, "[f]ederal law is in play, but it is not the only ball in play. The complaint gives a bunch of other reasons why Smith & Wesson was negligent . . . [that] have nothing to do with federal law." A-40. For instance, Plaintiffs allege that "Smith & Wesson knows, or has reason to know, of the foreseeable risk that marketing of its M&P assault rifles to civilian adolescents and young adults using military and law enforcement imagery and references and appeals to increas- ing adrenaline will inspire or encourage such consumers to choose M&P rifles for use in mass shootings." S.A. 55 (Compl. ¶ 234). Plaintiffs further allege that "Smith & Wesson has breached its duty of care by choosing—in the face of foreseeable risk—to negligently and misleadingly market its M&P rifles to teenagers and young adults." *Id.* (Compl. ¶ 235).

As further discussed below, Smith & Wesson argues for *Grable* jurisdiction based on Plaintiffs' alternative theory of Smith & Wesson's liability for negligence that refers to

federal law, *i.e.*, that "if Smith & Wesson had complied with the requirements of the [Fire-arms Act], the Shooter would not been able to access the weapon." *Id.* (Compl. ¶ 241). Smith & Wesson's argument fails for two reasons.

*First*, as the district court held, Plaintiffs allege theories of negligence wholly "apart from Plaintiffs' allegations about the [Firearms Act]," demonstrating that "Plaintiffs could prevail without establishing that Smith & Wesson violated the [Firearms Act]'s manufac-turing and labeling requirements." A-40.

*Second*, alleging that a defendant breached a duty of care by failing to comply with federal law is not sufficient to confer federal-question jurisdiction under *Grable*. As the Su-preme Court noted in *Grable*, "[o]ne only needed to consider the treatment of federal vio-lations generally in garden variety state tort law," where violations of federal law routinely provide support for a negligence per se claim under state law but do not raise a federal issue. 545 U.S. at 318–19. "That some standards of care used in tort litigation come from federal law does not make the tort claim one 'arising under' federal law." *Bennett* v. *Sw. Airlines Co.*, 484 F.3d 907, 912 (7th Cir. 2007). It follows, then, that a federal question is not embedded in Plaintiffs' common-law claims, as answering a federal question is, once again, not unavoidable.

(c)     The Court Need Not Adjudicate the Meaning and Application of the Firearms Act to Resolve Plaintiffs' Claims

Smith & Wesson's arguments that Plaintiffs' claims necessarily raise federal is-sues—notwithstanding that Plaintiffs bring state-law claims that can be proven without

reference to federal law, as explained above—boil down to the same easily rejected propo-

sition: that "the state court must adjudicate the meaning and application of the Firearms

Act to resolve [Plaintiffs'] claims." App. Br. at 33. According to Smith & Wesson, because

Plaintiffs' state-law claims include alternative theories that Smith & Wesson's deceptive

marketing practices, including the failure to identify its M&P assault rifles as machineguns,

led people to believe that they can obtain such weapons without complying with Firearms

Act requirements, and that Smith & Wesson failed to comply with Firearms Act require-

ments in manufacturing its weapons, *id.* at 29, Plaintiffs accordingly seek a "ruling that the

M&P rifle is *in fact* an NFA weapon," which necessarily raises a federal issue, *id.* at 30, 33

(emphasis in original).

Smith & Wesson's argument is unsupported by Plaintiffs' complaints, which seek no

such ruling. *See* S.A. 46, 49, 56 (Compl. ¶¶ 178, 201, 245) (seeking damages); *see* S.A. 53

(Compl. ¶ 224) (seeking injunctive relief). Indeed, the district court properly considered and

rejected this argument below, noting that "scattered references to federal law" within

Plaintiffs' Consumer Fraud Act claims "recede into the background" when compared to the

many other reasons, unrelated to federal law, why Smith & Wesson allegedly violated the

relevant statutes. *See* A-33. As set forth above, despite Smith & Wesson's attempt to "down-

play the non-federal reasons alleged in the complaint[s]," *see* A-35, *all* of Plaintiffs' claims

may be proven without deciding a single issue of federal law.

And Smith & Wesson "cannot establish federal jurisdiction by reading out of the

complaint independent state law grounds that support the claims." A-35 (quoting *Collins* v.

*Pontikes*, 447 F. Supp. 2d 895, 902 (N.D. Ill. 2006)). Indeed, federal courts in this Circuit and around the country consistently have rejected firearms companies' attempts to sideline state-law claims in order to manufacture federal jurisdiction. *See, e.g.*, *Tisdale* v. *Pagourtzis*, 2020 WL 7170491, at *5 (S.D. Tex. Dec. 7, 2020) (finding that federal law was not necessary to decide plaintiffs' negligence claims against ammunition vendors because violation of federal law "is just one way the plaintiffs can establish that the defendants were negligent") (citations omitted); *Daniel* v. *Armslist, LLC*, 2016 WL 660894, at *3–*4 (E.D. Wis. Feb. 17, 2016) (finding no federal jurisdiction over state-law claim against firearms online marketplace because, among other things, plaintiffs' claims did not rely exclusively on violation of federal law); *Corporan* v. *Wal-Mart Stores E., LP*, 194 F. Supp. 3d 1128, 1131–32 (D. Kan. 2016) (finding no federal jurisdiction over state claims against firearms retailer because plaintiffs' state-law claim was "supported by alternative and independent theories, one of which [did] not implicate federal law") (citations omitted). In support of its argument, Smith & Wesson relies on three cases—*Broder*, *Fleet Farm*, and *Arm or Ally*— that are neither controlling authority in this Court nor factually similar to Plaintiffs' claims here. App. Br. at 30–31. Indeed, unlike here, in all three cases it was *impossible* for the state court to resolve state-law claims without deciding some issue of federal law.

In *Broder* v. *Cablevision Systems, Corp.*, for example, the Second Circuit held that the plaintiff's claims for breach of contract "necessarily raised" a federal issue because the contract provisions the defendant allegedly breached *incorporated federal law*. 418 F.3d 187, 194–95 (2d Cir. 2005). There was no way for the court to answer the question of whether

32

the defendant had breached the contract without addressing federal law. Smith & Wesson cites *Broder* for the proposition that Plaintiffs' claims "necessarily implicate a 'complex federal regulatory scheme,'" which is "the manufacture, classification, distribution, taxing, and sale of firearms." App. Br. at 30–31 (citing *Broder*, 418 F.3d at 195). This misses the mark—unlike in *Broder*, there are ample ways for Plaintiffs to prove their state-law claims without any reference to federal law or that "federal regulatory scheme." *See supra* Section II.B.1(a) (outlining multiple independent state-law theories of Smith & Wesson's liability for violating the Consumer Fraud Act and the Deceptive Trade Practices Act) and Section II.B.1(b) (outlining multiple independent state-law theories of Smith & Wesson's liability for negligence and infliction of emotional distress).

Similarly, in *Minnesota* v. *Fleet Farm*, the district court there acted against a long line of cases (*see infra* at 35) by holding that it could not decide the plaintiff's state-law negligence claim without interpreting federal law, finding it to be a rare case in which the complaint was *wholly* "premised on the fact that [the defendant] violated its duty of care by not following federal guidance." 2023 WL 4203088, at *5 (D. Minn. June 27, 2023). Even assuming that the district court in *Fleet Farm* was correct, its holding is inapplicable here because, by contrast, Plaintiffs' state-law claims contain only scattered references to federal law and can easily be proven without demonstrating that Smith & Wesson violated "federal guidance." *See supra* Sections II.B.1(a) and II.B.1(b).

And in *New York* v. *Arm or Ally, LLC*, the district court held that the New York Attorney General's lawsuit under a state statute "necessarily raised" a federal issue because the state statute specifically provides that it applies to a gun industry member who sells a "qualified product" *as defined by federal law*. 644 F. Supp. 3d 70, 78–79 (S.D.N.Y. 2022). None of these cases involves claims resembling Plaintiffs' here, which all can be resolved without *any* application or interpretation of federal law. *See supra* Sections II.B.1(a) and II.B.1(b).

In sum, Plaintiffs' state-law claims do not necessarily raise a federal issue, and there is no "embedded federal question" under *Grable* for a federal court to decide. Because none of Plaintiffs' state-law claims is "impossible to decide" without deciding an issue of federal law, *Hartland Lakeside*, 756 F.3d at 1035, there is no federal-question jurisdiction. Moreover, because no federal issue is necessarily raised, no federal issue is actually disputed. *Webb*, 889 F.3d at 861.

### 2. Smith & Wesson Does Not Raise "Substantial" Federal Issues

None of the state-law causes of action in the complaints raises a "substantial" federal issue under *Grable*. Smith & Wesson's argument that this factor is satisfied is based on a wholesale rewrite of Plaintiffs' complaints. Smith & Wesson misleadingly asserts that "Plaintiffs' *core claim* [is] that Smith & Wesson violated the [Firearms Act]" and misconstrues the remedy sought by Plaintiffs by claiming that they seek "a declaration by a state court that the M&P rifle is a machine gun under the [Firearms Act]." App. Br. at 33, 45 (emphasis added). Contrary to Smith & Wesson's gross mischaracterization, Plaintiffs' 336-

paragraph Complaint includes only fourteen paragraphs—nine unique—that allege, as an alternative theory of liability for their state-law consumer protection and negligence claims, that Smith & Wesson negligently and deceptively marketed its M&P rifles without disclosing that they are "NFA weapons." *See supra*, Section II.B.1. These allegations do not amount to a separate "claim," let alone a "core" one. This Court should not allow Smith & Wesson to rebrand Plaintiffs' state-law claims as somehow "federal" at their "core" in order to shoehorn this action into federal court through *Grable* jurisdiction.

The few allegations in Plaintiffs' complaints that do refer to federal law, specifically to violations of the Firearms Act, are not "substantial" for purposes of *Grable*. *See Lancaster* v. *Astellas Pharma, Inc.*, 2008 WL 4378441, at *4 (S.D. Ill. Sept. 23, 2008) ("[T]he mere fact that a state court may have to reference federal regulations in determining the outcome of a claim is not sufficient by itself to create a substantial federal question under *Grable*.").

As set forth in Section II.B.1, *supra*, these allegations merely supply support for one of several alternative theories for relief on Plaintiffs' state-law claims—an alternative theory arguing that the M&P 15 meets a regulatory definition for a machinegun that courts have repeatedly applied. *See, e.g.*, Supp. App. 3–4 (*Goldstein*, No. 37-2020-00016638-CU-PO-CTL, at 3–4); *Parsons*, 2020 WL 1821306, at *5–*6. It cannot be that these federal issues are substantial when they are not even "necessarily raised" by Plaintiffs' claims, *see id.*, because "an issue not raised cannot be . . . substantial." *Webb*, 889 F.3d at 861.

Plaintiffs' scattered references to the Firearms Act are also not "substantial" because the Firearms Act confers no private right of action. The Supreme Court has held that,

in assessing whether a claim has the "sort of significance for the federal system" that confers federal-question jurisdiction, the lack of a remedy under the relevant federal statute "is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial.'" *Merrell Dow Pharms. Inc.* v. *Thompson*, 478 U.S. 804, 804 (1986). As further explained in Section III.C, *infra*, the Firearms Act does not provide a private right of action; thus, any claims arising under the Firearms Act are not substantial for purposes of *Grable*.

The absence of a "substantial" federal issue under *Grable* plainly requires remand. *Gunn*, 568 U.S. at 258.

### 3. Accepting Smith & Wesson's Arguments Would Disrupt the Federal-State Balance

Plaintiffs' claims are not "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 586 U.S. at 258. This is because the exercise of federal jurisdiction over quintessential state-law causes of action would fundamentally undermine the "federal-state division of labor." *Grable*, 545 U.S. at 315.

The Supreme Court has recognized that allowing federal jurisdiction over typical negligence claims, even where they may implicate issues of federal law, could dramatically and undesirably increase the volume of federal litigation over state-law claims. *Merrell Dow*, 478 U.S. at 811–12; *Grable*, 545 U.S. at 318–19. Removing such claims to federal court would therefore undermine the congressionally approved "federal-state balance" contemplated by *Gunn* and *Grable*.

36

Merely alleging a violation of federal law in connection with traditional "garden va-riety" tort claims, such as the negligence claims here, does not disturb the ordinary balance between state and federal courts. *See Grable*, 545 U.S. at 314, 318–19. Federal courts are courts of limited jurisdiction, and Congress did not intend for that limited jurisdiction to reach any action in which a plaintiff's complaint references federal law.

Federal courts considering similar cases to this one have observed as much. For in-stance, in *Corporan* v. *Wal-Mart Stores East*, relatives of a shooting victim sued a Wal-Mart in state court for negligently selling the shotgun that was used in the shooting to a straw purchaser in violation of federal law. *Id.* at 1130. Wal-Mart removed the case to fed-eral court, and on the plaintiffs' motion for remand, the Court held that federal jurisdiction was "not appropriate" because "[t]he Gun Control Act referenced by plaintiffs in their pe-tition does not create a private, federal cause of action and the petition reveals a fact-bound, private dispute between parties with no direct interest by the United States." *Id.* at 1133–34. Simply put, the presence of a federal issue as an ingredient in a tort claim is "not the kind of adjudication for which jurisdiction would serve congressional purposes and the fed-eral system." *Merrell Dow*, 478 U.S. at 814.

Smith & Wesson attempts to turn this well-worn doctrine on its head, arguing that "*remand* would disrupt the appropriate [federal-state] balance by allowing a state court to resolve a federal question . . . and potentially upend a federal regulatory scheme." App. Br. at 36 (emphasis in original). Its argument finds no traction. It is based on the same false premise, properly rejected by the district court out of hand and refuted again above, that

Plaintiffs' claims "necessarily raise" federal issues that must be addressed in order to resolve Plaintiffs' deceptive marketing and negligence claims. But the federal issues underlying "whether the M&P rifle is a 'machinegun'" pursuant to federal regulation and "whether Smith & Wesson violated the [Firearms Act]," App. Br. at 35, simply do not need to be adjudicated in order for Plaintiffs' claims to be resolved, because those claims are independently supported by ample factual allegations unrelated to any federal issue. *See* Section III.B.1, *supra*. There is nothing to Smith & Wesson's assertion that a *state* court hearing claims arising under *state* law—just as it should—would offend principles of federalism.

*   *   *

Smith & Wesson cannot satisfy any of the *Grable* factors. The district court's finding that it lacks federal-question jurisdiction therefore should be affirmed.

### C.     The Artful Pleading Doctrine Does Not Permit Removal Here

The artful pleading doctrine also does not provide federal-question jurisdiction here because Plaintiffs bring straightforward state-law claims. As detailed above, Plaintiffs' claims against Smith & Wesson facially and substantively allege violations of Illinois state statutes and Illinois state common law.

As the district court correctly explained, the artful pleading doctrine is an exception to the well-pleaded complaint rule, which applies only where a plaintiff has "disguised" federal claims as state-law claims. A-51-52; *see Franciscan Skemp Healthcare, Inc.* v. *Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008). Put another

way, "[a] plaintiff may not frame his action under state law and omit federal questions that are essential to recovery." *Burda* v. *M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir. 1992) (citing *Franchise Tax Bd.*, 463 U.S. at 22). But Plaintiffs did not "fail[] to plead federal questions necessary to recovery or facts that would indicate federal jurisdiction." *See Empress River Casino Corp.* v. *Loc. Unions No. 9 and 176, Int'l Bhd. of Elec. Workers*, 1994 WL 262075, at *3 (N.D. Ill. June 10, 1994) (citing *Burda*, 954 F.2d at 438). Smith & Wesson did not contend otherwise before the district court, and it conspicuously does not make such an argument here.

Instead, Smith & Wesson seeks to manufacture federal claims by stripping Plaintiffs' claims of their state-law bases. *See* App. Br. at 37. Relying on the false premise that federal courts "must evaluate the merits" of state-law claims when assessing jurisdictional questions, Smith & Wesson requests that this court "disregard" Plaintiffs' state-law claims because they are purportedly "implausible." *Id.* But Smith & Wesson fails to provide any meaningful support for the notion that a federal court is entitled to resolve state-law claims on the merits as part of a jurisdictional analysis, and Plaintiffs are aware of none. Indeed, that proposition confuses the order in which federal courts must operate: "Subject-matter jurisdiction always comes ahead of the merits." *Leguizamo-Medina* v. *Gonzales*, 493 F.3d 772, 774 (7th Cir. 2007); *see also Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 98 (1998) (noting "two centuries of jurisprudence affirming the necessity of determining jurisdiction before proceeding to the merits").

As Smith & Wesson concedes, its cases do not support the proposition that a federal court may resolve state claims to assess the existence of federal subject-matter jurisdiction but instead address the extremely limited set of circumstances in which "attempts to plead a *federal* claim to establish jurisdiction over state-law claims" in *federal* court require a federal court to review the merits of that *federal* claim. App. Br. at 37 (emphasis added); *see, e.g.*, *Walton* v. *Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011) (explaining that "utterly groundless" claim brought in federal court against non-diverse defendant does not create federal jurisdiction).[14]

Smith & Wesson misleadingly frames such an assessment by federal courts as routine, though it is anything but. Federal courts review the merits of a federal claim when assessing subject-matter jurisdiction only if the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co.*, 523 U.S. at 89 (citation omitted). Tellingly, Smith & Wesson provides no case law to support the inverse: that there are any circumstances in which a federal court must weigh the merits of *state*-law claims that plaintiffs seek to have adjudicated in *state* court. There is no such set of circumstances.

In any event, Smith & Wesson's arguments about the merits of Plaintiffs' state-law claims are misplaced. Such claims are far from "implausible" or "foreclosed" on the merits,

---

[14]  Smith & Wesson also cites *Shapiro* v. *McManus*, 577 U.S. 39, 45–46 (2015), for this proposition, but it is entirely inapposite. There, the Supreme Court assessed whether 28 U.S.C. § 2284(a) required that plaintiff's federal claims regarding apportionment of congressional districts be reviewed by a three-judge district court rather than one presided over by a single judge. *Id.* at 41–42.

as demonstrated by a recent case in the Supreme Court of Connecticut in which analogous claims survived a motion to dismiss. *See Soto* v. *Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 325 (Conn. 2019) (affirming trial court's determination that federal statute did not prevent plaintiffs from pursuing unethical advertising claims under Connecticut Unfair Trade Practices Act); *see also Prescott* v. *Slide Fire Solutions, LP*, 410 F. Supp. 3d 1123, 1141 (D. Nev. 2019) (declining to dismiss negligence claim based on firearm industry defendant's alleged failure to reasonably and safely sell and market its product).

Neither of the cases Smith & Wesson cites as support for its pronouncement that the "Illinois Supreme Court [has] foreclosed causation against firearm manufacturers," App. Br. at 38, is dispositive here because those cases dealt with claims of public nuisance, not consumer protection laws. *Young* v. *Bryco Arms*, 821 N.E.2d 1078, 1080–801 (Ill. 2004) (public nuisance claims against 21 firearm manufacturers and distributors); *City of Chicago* v. *Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1105–06 (Ill. 2004) (public nuisance claims against thirteen firearms manufacturers, two firearms distributors, and eight firearms dealers).

Smith & Wesson also fails to provide support for the even further-flung notion that a defendant's claimed grounds for removal of a case, rather than a plaintiff's own pleading, permit a federal court to review the merits of plaintiff's state-law claims. A-37. The one case Smith & Wesson cites in support of this proposition, *Illinois Public Risk Fund* v. *Purdue Pharma L.P.*, in fact cuts against it. There, the district court found that the plaintiff's complaint did not necessarily raise a federal issue under *Grable*, including because a mere "reference to federal law does not suggest that a federal issue will inevitably arise." 2019 WL

41

3080929, at *2 (N.D. Ill. July 15, 2019). The court declined to assess the merits of plaintiff's claims and remanded the case to state court without even mentioning the merits. *Id.* at *3.

Thus, Smith & Wesson entirely fails to show that the artful pleading doctrine applies here. As the district court unequivocally stated, Plaintiffs' claims "are not federal claims in disguise." A-52. Smith & Wesson's repeated and tortured attempts to shoehorn merits arguments into a jurisdictional dispute do not change this conclusion. If anything is "disguised" here, it is Smith & Wesson's attempt to frame an improper merits argument as an issue to be addressed under the artful pleading doctrine. The merits of Plaintiffs' state-law claims should be decided in state court.

**D.    The District Court's Rejection of Smith & Wesson's Complete Preemption Argument Was Correct**

Smith & Wesson also argues that removal was proper under the "complete preemption doctrine" because Plaintiffs' claims "can be recast" as federal claims for relief, and claims based on preempted state law arise under federal law. App. Br. at 42. According to Smith & Wesson, complete preemption applies here because Plaintiffs' claims "are predicated and rely" on "alleged violations of the [Firearms Act] which provides an exclusively federal regulatory regime for certain classes of firearms." *Id.* at 43. But complete preemption does not apply here because the Firearms Act does not create a private right of action, nor does it include a clear congressional intent to completely preempt the state-law claims under which Plaintiffs here seek relief.

Seventh Circuit precedent holds that "complete preemption can only exist where, *inter alia*, the federal statute provides a private right of action." *Rogers* v. *Tyson Foods,*

42

*Inc.*, 308 F.3d 785, 790 (7th Cir. 2002). Given this narrow limitation, the complete preemption doctrine has been applied only to a "select group of claims," none of which is at issue here. *See Corp. Travel Consultants, Inc.* v. *United Airlines, Inc.*, 799 F. Supp. 58, 60 (N.D. Ill. 1992). As the district court noted, "[c]omplete preemption is rare," A-46 (citing *Maglioli* v. *All. HC Holdings LLC*, 16 F.4th 393, 408 (3d Cir. 2021)), and the "Supreme Court has recognized only three federal statutes that completely preempt analogous state-law actions." *Id.* (citations omitted). The Firearms Act is not among them.

The Firearms Act does not create a private right of action—as Smith & Wesson acknowledges. *See* App. Br. at 47 (Firearms Act "is not privately enforceable"). Smith & Wesson tries to fill that gap by contending that the Administrative Procedure Act "operate[s] in tandem" with the Firearms Act "to completely preempt Plaintiffs' claims" by providing a private cause of action—specifically because a person may petition a court to review a federal agency's administrative determinations under the Firearms Act. *Id.* at 44. But the Administrative Procedure Act permits suits against federal agencies only based on "agency action" that is final. *See* 5 U.S.C. §§ 702, 704. It does not create a private right of action to sue private parties, as the complete preemption doctrine requires. And it certainly creates no right of action here, where there is no final ATF determination regarding the classification of Smith & Wesson's M&P rifle. In any event, as the district court correctly found, "judicial review of agency action does not preempt the [Consumer Fraud Act or] Plaintiffs' other state-law tort claims." A-50.

That result is particularly clear-cut because "any further expansion of the [complete preemption] doctrine" beyond the three federal statutes cited above "requires a *clear* showing of Congressional intent to *eliminate state law entirely*." *Wabash Valley Power Ass'n*, 707 F.3d at 894 (emphasis added). Smith & Wesson does not (and cannot) substantiate its contention that Congress intended to eliminate state law regarding unfair and deceptive marketing. Interpreting the Administrative Procedure Act as Smith & Wesson suggests would produce the absurd result of preempting any state law covering the same subject matter as any federal agency's rules.

Moreover, Smith & Wesson's argument that Plaintiffs' complaints are completely preempted yet again ignores the complaints themselves, which allege unfair, deceptive, and negligent *marketing* practices—an area that is not governed by any federal laws or regulations. Therefore, even if Plaintiffs' allegations that Smith & Wesson violated the *Firearms Act* were somehow preempted—they are not—Plaintiffs would still retain theories of, among others, Consumer Fraud Act and negligence liability based on Smith & Wesson's other unfair, deceptive, and unlawful conduct.

Nor do the ATF's regulatory determinations preempt any of Plaintiffs' claims. In fact, the ATF's regulations and determinations do not conflict with—and actually support—Plaintiffs' theories. Multiple courts have cited ATF Ruling 82-8 (or an analogous ruling) while agreeing that it is plausible to view AR-15-style firearms as constituting "machineguns" under the National Firearms Act. *Parsons*, 2020 WL 1821306, at *5–*6; Supp. App. 3–4 (*Goldstein*, No. 37-2020-00016638-CU-PO-CTL, at 3–4).

44

### III.    Smith & Wesson's Failure to Obtain Consent From All Defendants Also Prevented Removal

"As a general rule, all defendants must join in a removal petition in order to effect removal." *N. Ill. Gas Co.* v. *Airco Indus. Gases*, 676 F.2d 270, 272 (7th Cir. 1982) (citing *P. P. Farmers Elevator Co.* v. *Farmers Elevator Mut. Ins. Co.*, 395 F.2d 546, 547 (7th Cir. 1968)); *see also* 28 U.S.C. § 1446(b)(2)(A). However, when Smith & Wesson removed this case, it failed to obtain the consent of two defendants—Robert Crimo Jr., and Robert Crimo, III. Smith & Wesson asserts that the district court did not resolve whether "removal was defective for failing to secure the consent of all defendants." App. Br. at 47. However, the district court rejected Smith & Wesson's excuses for failing to secure consent, concluding that Smith & Wesson's arguments failed because they assumed, incorrectly, the existence of a federal claim. A-54.

Smith & Wesson first asserts that because it seeks to remove this case under Section 1442 (the federal-officer removal statute), "the consent requirement of Section 1446(b)(2)(A) was not triggered." App. Br. at 48. But Section 1442, the federal-officer removal statute, is not a valid basis for removal here and accordingly is not an excuse for failing to obtain consent. A-21; *see supra* Section I.

In the alternative, Smith & Wesson contends that removal under Section 1441(c) provides an exception to the consent requirement, such that consent is not required from defendants against whom plaintiffs assert state-law claims over which the court lacks supplemental jurisdiction. App. Br. at 48. Under Smith & Wesson's ill-conceived theory that Plaintiffs assert federal claims against Smith & Wesson but assert only unrelated state-law

claims against the Crimo defendants, a federal court would not have supplemental jurisdiction over the claims against the Crimo defendants and Smith & Wesson would not need to obtain consent for removal from them. But as the district court correctly held, Section 1441(c) "applies only when the complaint includes a claim that arises under federal law," and here "no claim arises under federal law." A-54; *see supra* Section II.B.

Even if a claim did arise under federal law here, the court would have supplemental jurisdiction over all claims. "The court has supplemental jurisdiction 'over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Sanchez & Daniels* v. *Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (quoting 28 U.S.C. § 1367(a)). Every one of Plaintiffs' claims arises from the same harm (Plaintiffs' injuries sustained during the mass shooting) and is based on the same operative facts (the events leading to and including the mass shooting). "Two claims are part of the same case or controversy if they 'derive from a common nucleus of operative facts. A loose factual connection between the claims is generally sufficient.'" *Id.* (citations omitted). "Section 1441(c)(1) does not apply" where "claims arise from the same common nucleus of operative facts." *Elftmann* v. *Vill. of Tinley Park*, 191 F. Supp. 3d 874, 883 (N.D. Ill. 2016). That is the case here.

It is irrelevant whether the "alleged unlawful acts" by Smith & Wesson are distinct from the acts of other defendants, as Smith & Wesson now argues. App. Br. at 48. The cases Smith & Wesson cites in support of this proposition are neither relevant nor controlling. *See Gen. Auto Serv. Station* v. *City of Chi.*, 2004 WL 442636, at *11–*12 (N.D. Ill. Mar. 9,

46

2004) (assessing whether claims against two different entities were "related" on motion to dismiss); *Wagner* v. *Bank of Am.*, N.A., 2012 WL 6586347, at *2–*3 (S.D. Ill. Dec. 17, 2012) (finding no supplemental jurisdiction where plaintiff explicitly pled federal-law claim and motion to remand acknowledged state-law claims were "totally unrelated to the federal claim").

In connection with Section 1441(c), all that matters is that the harm to Plaintiffs by each defendant arises from a common set of underlying facts. *See Am. Fire & Cas. Co.* v. *Finn*, 341 U.S. 6, 14 (1951) ("[W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)"); *Lewis* v. *Louisville & Nashville R. Co.*, 758 F.2d 219, 221 (7th Cir. 1985) ("Even if more than a single wrong exists, claims are not 'separate and independent' if the wrongs arise from an interlocked series of transactions, *i.e.*, they substantially derive from the same facts.") (citations omitted). That is unquestionably true here. In fact, Smith & Wesson has acknowledged that each claim brought by Plaintiffs "arises out of the shooting committed by Crimo III at the July 4, 2022, parade in Highland Park, Illinois and essentially the same advertisements by Smith & Wesson," and that the claims share common questions of law and fact. Case No. 1:22-cv-06169, Dkt. No. 23 at 8.

Thus, none of the exceptions to the consent requirement for removal claimed by Smith & Wesson applies. Because Smith & Wesson was required to obtain the consent of all defendants for removal, *see N. Illinois Gas Co.*, 676 F.2d at 272; *see also* 28 U.S.C.

§ 1446(b)(2)(A),[15] and Smith & Wesson admitted that it failed to secure such consent, this Court should affirm the district court's conclusion that Smith & Wesson's removal was incurably defective.

---

[15] "When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A).

## CONCLUSION

The district court's order remanding the action to state court should be affirmed.

Respectfully submitted,

/s/ Alexander G. Tievsky

ALEXANDER G. TIEVSKY*
J. ELI WADE-SCOTT
EDELSON PC
*350 N LaSalle Street, 14th Floor*
*Chicago, IL 60654*
*(312) 589-6370*
*atievsky@edelson.com*

ERIN DAVIS
PHILIP BANGLE
BRADY CENTER TO PREVENT GUN VIO-
LENCE
*840 FIRST STREET NE, SUITE 400*
*WASHINGTON, DC 20002*
*(202) 370-8100*

DONNA J. VOBORNIK
BRIAN E. COHEN
DENTONS US LLP
*233 S. WACKER DRIVE, SUITE 5900*
*CHICAGO, IL 60606-6361*
*312-876-8000*

*Counsel of record in Case Nos. 23-2999 and
23-3002

/s/ H. Christopher Boehning

H. CHRISTOPHER BOEHNING**
PAUL, WEISS, RIFKIND,
     WHARTON & GARRISON LLP
*1285 Avenue of the Americas*
*New York, NY 10019-6064*
*(212) 373-3000*
*cboehning@paulweiss.com*

ANTONIO M. ROMANUCCI
DAVID A. NEIMAN
ROMANUCCI & BLANDIN, LLC
*321 North Clark Street, Suite 900*
*Chicago, IL 60654*
*(312) 458-1000*

ALLA LEFKOWITZ
EVERYTOWN LAW
*P.O. Box # 14780*
*Washington DC 20044*
*(202) 545-3257*

KEITH L. HUNT
DELANEY A. HUNT
HUNT LAW PC
*2275 HALF DAY RD SUITE 126*
*BANNOCKBURN, IL 60015*
*(312) 558-1300*

** Counsel of record in Case Nos. 23-2992, 23-
2993, 23-2994, 23-2995, 23-2996, 23-2997, 23-
2998, 23-3000, 23-3001, 23-3003

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I hereby certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 7th Cir. R. 32(c) because it contains 13,997 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) and 7th Cir. R. 32(b) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 12-point font.

/s/ H. Christopher Boehning
H. CHRISTOPHER BOEHNING

JANUARY 23, 2024

**SUPPLEMENTAL APPENDIX TO THE BRIEF OF PLAINTIFFS-APPELLEES**

**TABLE OF CONTENTS**

Page

*Goldstein* v. *Earnest*, No. 37-2020-00016638-CU-PO-CTL (Ca. Super. Ct. July 2, 2021) .................................................................................................... Supp. App. 1

**MINUTE ORDER**

DATE: 07/02/2021           TIME: 04:48:00 PM        DEPT:  C-66

JUDICIAL OFFICER PRESIDING: Kenneth J Medel
CLERK:  Bernice Orihuela
REPORTER/ERM:
BAILIFF/COURT ATTENDANT:

CASE NO: **37-2020-00016638-CU-PO-CTL** CASE INIT.DATE: 05/26/2020
CASE TITLE: **Goldstein vs Earnest [EFILE]**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: PI/PD/WD - Other

---

## APPEARANCES

The Court, having taken the above-entitled matter under submission on 6/8/2021 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

### Background:

This case stems from a shooting at the Chabad of Poway synagogue on the last day of Passover in April, 2019. Using a firearm, the shooter shot and killed one person and injured others.

Plaintiffs allege that Smith & Wesson marketed, manufactured, distributed, and ultimately sold (through a retailer, San Diego Guns, LLC) a Rifle that was made to be easily modified into a military-style assault rifle prohibited under California law and which constituted an automatic-fire "machinegun" prohibited under federal law. The gun was marketed to a 19-year-old Shooter who did not have a valid hunting license that would have allowed him to buy the gun. See First Amended Complaint at ¶¶31–33.

As to San Diego Guns, plaintiffs allege San Diego Guns violated its duty as "a principal agent of federal law enforcement" in "restricting criminals' access to firearms. The First Amended Complaint specifically alleges that San Diego Guns violated this duty by (1) choosing to sell the weapon that was used to the Shooter, despite having actual or constructive knowledge that the hunting license the Shooter presented was not valid for the purchase of any firearms in April 2019, months before the license going into effect in July 2020. (Id. at ¶ 130-132); and (2) by transferring a firearm and ammunition to an individual under the age of 21 who had not presented and did not possess a valid hunting license, San Diego Guns knowingly and directly violated Cal. Pen. Code § 27510. (Id. at ¶ 124-125,137)

Also, San Diego Guns, as the seller and distributor engaged in sales of firearms in State of California, knew or should have known that Smith & Wesson included design features in its M&P 15 series of AR-15 style guns that enabled them to be easily modified, including to fire automatically and to constitute a prohibited assault weapon under California law. San Diego Guns, could have and should refused to distribute or sell weapons susceptible to such modifications (as other companies have chosen to do). (Id. at ¶ 52-53).

### Notice of Withdrawal of Certain Allegations

On or about June 4, 2021, the Court received from Attorneys for Plaintiff a "Notice of Withdrawal of Certain Allegations from the First Amended Complaint." Attached to the Notice is a letter addressed to the Judge indicating that plaintiffs are no longer making allegations that the Rifle was modified in

---

DATE: 07/02/2021                         MINUTE ORDER                              Page 1
DEPT: C-66                                                                   Calendar No.

violation of California's prohibition on assault weapons. Specifically, plaintiffs state the following allegation in the FAC are being withdrawn: p.9, paragraph 50, p. 10, paragraph 54, p.23, paragraph 106. Based upon this notice and statements made at oral argument, the Court STRIKES these allegations from the First Amended Complaint.

**Demurrers and Motions to Strike by LISA C. EARNEST and JOHN A. EARNEST and the State of California, Dept. of Fish and Wildlife**

At the hearing, Lisa and John Earnest took their Demurrer and Motion to Strike OFF CALENDAR. Prior to the hearing, Plaintiffs dismissed the State of California, Dept. of Fish and Wildlife. The State of California, Dept. of Fish and Wildlife took their Demurrer and Motion to Strike OFF CALENDAR.

**Demurrer by Smith & Wesson Brands, Inc. [S&W]**

The following causes of action have been alleged against S&W: (1) Products Liability – Defective Design; (2) UCL; (3) Common Law Negligence; (4) Public Nuisance

S&W first argues it is immune under the federal Protection of Lawful Commerce in Arms Act [PLCAA], which provides manufacturers and sellers with immunity against "civil action[s] ... for damages ... injunctive relief ... or other relief, resulting from the criminal or unlawful misuse" of firearms. 15 U.S.C. § 7903(5)(A).

Federal Preemption

Federal preemption is a question of Congressional intent. The PLCAA, both in its operative provisions and statements of purpose, clearly reveals congressional intent to prohibit state common law causes of action that meet the definition of a qualified civil liability action. Ileto v. Glock, Inc., 421 F. Supp. 2d 1274 (C.D. Cal. 2006) ("[C]ongressional intent to [preempt state tort claims] is clear from the text and purpose of the [PLCAA].")

Is this case a "qualified civil liability action"?

Under the PLCAA, a cause of action that meets the definition of a "qualified civil liability action" shall not be brought in any federal or state court. 15 U.S.C. § 7902(a).

Congress defined a "qualified civil liability action" as follows:

...a civil action...brought by any person against a manufacturer or seller of a qualified product...for damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, *resulting from the criminal or unlawful misuse of a qualified product by the person or a third party.* 15 U.S.C. § 7903(5)(A).

Plaintiffs argue this case does not fall within the scope of the general definition of "qualified civil liability action" within § 7903(5)(A), particularly when the section is read in conjunction with the preamble to the statute that indicates the Act's purpose is to prohibit actions for harm "solely caused" by the misuse or criminal use of guns. Plaintiffs argue that the First Amended Complaint alleges independent liability on behalf of the manufacturer and seller and thus, the action is not "resulting from" the [solely caused] criminal or unlawful use of the shooter.

First, as a matter of statutory construction, language stating the purpose for which a statute is enacted cannot be used to limit the clear terms used in the statute's operative provisions. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 245. Here, the plain language of Section 7903(5)(A) requires the action to be "resulting from" the criminal or misuse. There is no requirement that it be "solely caused".

Based on the facts alleged in the FAC, the alleged liability here "results from" the criminal use.

The First Amended Complaint alleges the following:

1. On April 27, 2019, worshippers were gathered at the Chabad of Poway synagogue to attend services on the last day of the Jewish holiday, Passover, which commemorates the survival and liberation of the Jewish people.

2. Outside the synagogue was a teenager...who was bent on waging war on the worshippers and exterminating the Jewish people. His hateful views could not, on their own, cause a fraction of the

physical and emotional harm he would soon render on the Chabad community of worshippers.

3. As a result of Defendants' actions and/or inaction, the Shooter used a SMITH & WESSON M&P 15, AR-15 style rifle to engage in a mass shooting on April 27, 2019-a military-style assault on the worshippers at the Chabad of Poway synagogue (the "Incident").

There is no dispute that rifle used here is a "qualified product". Paragraph 3 alleges this action results from the misuse of that product. As alleged, this action is a "qualified civil action" within the purview of the PLCAA.

<u>Exceptions</u>

The immunity for firearm manufacturers and sellers is subject to certain exceptions set forth in 15 U.S.C. §§ 7903(5)(A)(i)-(vi). A viable state law action that fits within one of six enumerated exceptions is not prohibited. The following exceptions are relevant to this case.

...

(ii) an action brought against a seller for negligent entrustment or negligence per se;

(iii) an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including-

(I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make an appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted or conspired with any person in making any false entry or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

(II) any case in which the manufacturer or seller aided, abetted, or conspired with any person to sell or otherwise dispose of a qualified product, knowing or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm under subsection (g) or (n) of section 922 of title 18;

...

(v) an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that when the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage.

...

15 U.S.C. §§ 7903(5)(A)(i) - (vi).

<u>"Predicate exception" [15 U.S.C. §§ 7903(5)(A)(iii)]</u>

The "predicate exception" permits "[a]ctions where a manufacturer or seller knowingly violated a State or Federal Statute applicable to the sale or marketing of the product, *where violation proximately caused the harm sued upon*[.]" 15 U.S.C. § 7903(5)(A)(iii) [emphasis added].

After the "Notice of Withdrawal" (discussed above), the First Amended Complaint alleges that that Smith & Wesson knowingly violated, either directly or as an accomplice/conspirator: (1) the federal law's prohibition on the sale of automatic fire "machinegun[s]" to the general public (18 U.S.C. 922(b)(4)) and (2) California's prohibition on "deceptive, untrue or misleading advertising" under the Unlawful Competition Law.

(1) Federal Statute prohibiting sale of automatic fire machine guns.

Paragraph 56 of the First Amended Complaint alleges: "The NFA defines a "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). The definition also includes "the frame or receiver of any such weapon," as well as "any part" or "combination of parts designed and intended, for use in converting a weapon into a machinegun," and "any combination off parts from which a machinegun can be assembled" as long as those "parts are in the

DATE: 07/02/2021        MINUTE ORDER        Page 3
DEPT: C-66        Calendar No.

Supp. App. 3

possession of under the control of a person." Id.

Paragraph 57 alleges: "18 U.S.C. § 922(b)(4) prohibits the sale of "machinegun[s]" to members of the general public who have not undergone the required registration process."

Paragraph 58 alleges: "In 1982, the Bureau of Alcohol, Tobacco Firearms and Explosives (ATF) underscored that the NFA definition of "machinegun[s]" includes "those weapons which have not previously functioned as machineguns but possess design features which facilitate full automatic fire by simple modification or elimination of existing component parts."

Paragraph 64 alleges: "SMITH & WESSON chose to design the Rifle in a manner that made it able to be easily modified or degraded to fire automatically." Paragraph 65 alleges that methods for easy modification of the Rifle at issue.

Based on these paragraphs, plaintiffs have alleged a federal statute applicable to the sale or marketing of the product: 18 U.S.C. § 922(b)(4)).

S&M argues that "predicate exception" is still not applicable because in order to qualify for the "predicate exception", the violation must have "proximately caused the harm sued upon." 15 U.S.C. § 7903(5)(A)(iii). According to S&M, plaintiffs have not pleaded, nor do they now argue, that the rifle used in the shooting had actually been so modified to fire fully automatic as allegedly proscribed by the federal law. Thus, any violation of federal law did not "proximately cause" the harm sued upon.

Proximate cause is "that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury [or damage complained of] and without which such result would not have occurred..." (State of California v. Superior Court (1984) 150 Cal.App.3d 848, 857)

Paragraph 111 alleges: "Upon information and belief, the Shooter would not have acquired the Rifle or used it in the Incident but for his exposure to the reckless, deceptive and illegal marketing campaign disseminated by SMITH & WESSON and SMITH & WESSON's associated design decisions." Plaintiffs have alleged causation — the Shooter would not have acquired the Rifle or used it but for S&M's design decisions, which were allegedly in violation of federal law. Thus, for purposes of pleading, the First Amended Complaint alleges causation.

(2) California's prohibition on "deceptive, untrue or misleading advertising" under the Unlawful Competition Law

The question is whether the UCL is a "State or Federal statute applicable to the sale or marketing" of a firearm.

According to S&W, "Congress had in mind only ... statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry — rather than general tort theories that happened to have been codified by a given jurisdiction." Ileto v. Glock, Inc., 565 F.3d 1126, 1135-36 (2009), cert denied 560 U.S. 924 (2010).

Plaintiffs argue that because Congress chose not to limit the predicate exception to firearms-specific laws, but intended to exempt actions alleging a violation of any law that is capable of being applied to the sale and marketing of firearms, "then there is little doubt that state consumer protection statutes ...would qualify as predicate statutes." See Soto v. Bushmaster Firearms International, LLC, 331 Conn. 53, 119 (2019).

Accordingly, California's UCL-which forbids "unlawful, unfair or fraudulent" conduct with virtually any type of business activity-is clearly capable of being applied to the sale and marketing of firearms and qualifies as a "predicate." Cal. Bus. & Prof. Code §§ 17200 et seq.

There is a split of authority on the broad issue of whether consumer protection statutes such as California's UCL fall within statutes "applicable to the sale or marketing" of a firearm.

In statutory interpretation, the Court is to begin with plain language. See, e.g., Maslenjak v. United States, —— U.S. ——, 137 S.Ct. 1918, 1924, 198 L.Ed.2d 460 (2017). As stated by the Soto court, "applicable" means "capable of being applied." Under this understanding, the UCL is applicable to sale and marketing of a firearm. See Smith & Wesson Corp. v. Gary, 875 N.E.2d 422, 431, 434–35 and n.12 (Ind. App. 2007) (predicate exception unambiguously applies to any state law capable of being applied

DATE: 07/02/2021                    MINUTE ORDER                    Page 4
DEPT: C-66                                                          Calendar No.

**Supp. App. 4**

to sale or marketing of firearms), transfer denied, 915 N.E.2d 978 (Ind. 2009). The UCL would also, by its terms, be a statute involving sale or marketing of any product, including firearms.

Nothing in the statute indicates that that the predicate statutes have to exclusively apply to firearms. The Soto Court also insightfully found that "if Congress had intended to limit the scope of the predicate exception to violations of statutes that are directly, expressly, or exclusively applicable to firearms, however, it easily could have used such language, as it has on other occasions." Soto, supra, 331 Conn. at 119–20, 202 A.3d at 302–03.

The Court in Soto also recognized a significant point implying intent: at the time PLCAA was enacted, no federal statutes directly or specifically regulated the marketing or advertising of firearms. In addition, only a handful of states have enacted firearm specific laws that address in any way the marketing function, and none of those purports to comprehensively regulate the advertising of firearms. "It would have made little sense for the drafters of the legislation to carve out an exception for violations of laws applicable to the marketing of firearms if no such laws existed. Ibid. at 121-22.

Thus, the Court finds that the UCL qualifies as a "predicate statute." (Whether or not the First Amended Complaint meets the necessary elements for a UCL claim is discussed in depth below.)

## Scope of the "Predicate Exception"

The question becomes what is the scope of the "predicate exception." Does the action as a whole, that is,"all" causes of action, survive if the "predicate exception" applies or should the court look at each cause of action on a claims-by-claim basis?

Plaintiffs argue that since this action fits into the "predicate exception" of the PLCAA for alleged violation of a statute relating to the sale of guns, their entire action survives. They make the following statement in Opposition: "Courts across the country have held that PLCAA's 'predicate exception' permits the entire "action in which" a predicate statutory violation is alleged to proceed, meaning that all claims survive-including simple negligence or nuisance claims which do not otherwise fall within an enumerated exception. Hence, Smith & Wesson is incorrect that Plaintiffs' negligence and public nuisance claims are automatically barred because there is no express exception for them under PLCAA, and that Plaintiffs' product liability claim is barred if it does not satisfy PLCAA's exception for products liability claims in § 7903(5)(A)(v)." (p.17)

There is a split of authority on this issue as summarized in the case of Ramos v. Wall-Mart Stores Unlimited 202 F.Supp.3d 457, 465-466 (Penn. 2016). (That decision is cited in the Reply Brief of San Diego Guns, LLC to its Demurrer. The issue was left unresolved in the decision, but the cases supporting the split are acknowledged.)

This Court interprets the PLCAA to apply on a claim-by-claim basis, requiring every claim within a case to find its own exception to avoid being blocked by the Act. The express purpose of the Act was to "prohibit *causes of action* against manufacturers, distributors, dealers, and importers of firearms or ammunition products...for the harm solely caused by the criminal or unlawful misuse of firearm products," see 15 U.S.C. § 7901(b)(1) (emphasis added). Further, the Act's exceptions appear to pertain to individual claims, including negligent entrustment or negligence per se as well as products liability.

## Constitutionality

Plaintiffs raise a variety of challenges to the constitutionality of the PLCAA, including that the PLCAA exceeds Congress' commerce clause authority, violates the Tenth Amendment, and deprives them of the due process clause and equal protection rights.

At this juncture, the Court does not need to reach these constitutionality issues in ruling on the demurrer given the analysis above that the statute is not a bar to all allegations in the case. In other words, the constitutionality would only be an issue if the Court were to determine that there was no liability under the statute. These issues are preserved for any future dispositive rulings.

## First Cause of Action for Products Liability

SUSTAINED WITHOUT LEAVE TO AMEND

The basis for this cause of action is the following alleged design defect: "The Rifle was designed to be

DATE: 07/02/2021          MINUTE ORDER          Page 5
DEPT: C-66                                      Calendar No.

**Supp. App. 5**

easily modified to fire automatically, prohibited under federal law unless sold in compliance with the federal National Firearms Act ("NFA")."

In the demurrer, defendants contend that this cause of action is squarely covered by the PLCAA. Products liability for defects in design or manufacture are exempt under subdivision 7903(5)(A)(v), "*except* that when the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage."

According to defendant, plaintiffs have pleaded that the shooter deliberately discharged the firearm. (FAC ¶¶ 160-165). The shooter's volitional act was undeniably criminal, and was as a matter of law, the sole proximate cause of the shooting and plaintiff's damages under § 7903(5)(A)(v).

As discussed above, Plaintiffs argue that since this matter fits into the "predicate exception" of the PLCAA for alleged violation of a statute relating to the sale of guns, their entire action survives, including products liability. However, the statute specifically addresses products liability claims. Thus, even if there is a predicate statutory basis for other causes of action, products liability is allowed *except when the discharge of the product was caused by a volitional act that constituted a criminal offense.* As indicated above, the pleading indicates the discharge of the product was caused by a volitional act that constituted a criminal offense. Thus, the products liability claim is barred under the PLCAA.

<u>Second Cause of Action for UCL Violation</u>

SUSTAINED WITH 20 DAYS LEAVE TO AMEND

As stated above, this Court finds that California's UCL qualifies as a statute applicable to the sale or marketing of firearms under the predicate exception to PLCAA immunity. 15 U.S.C. § 7903(5)(A)(iii). Defendant S&W make additional arguments as to the viability of this claim.

(1) No deceptive marketing claim under the UCL fraudulent prong.

The FAC alleges that SMITH & WESSON engaged in a marketing campaign targeting youth with advertisements over social media and through videogame-like commercials despite the known risks that young people in that demographic are highly susceptible to that type of advertising and have disproportionately perpetrated mass shootings using similar firearms. SMITH & WESSON's marketing violated California's prohibition on "deceptive, untrue or misleading advertising" (see Cal. Bus. & Prof. Code § 17200)

S&W argues that, as a matter of fact, the Court will not be able to make findings that support deceptive, untrue or misleading advertising. However, the Court cannot make this determination on demurrer.

(2) Standing

Under cases such as Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 322 (2011) ("[A] party must ... (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e. economic injury, and (2) show that the economic injury was the result of, i.e., caused by the unfair business practice ... that is the gravamen of the claim." The Court in Kwikset summarized the types of injuries in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. Ibid. citing Hall v. Time Inc., supra, 158 Cal.App.4th at pp. 854–855.

The pleading does not allege any injury in fact under any of the categories defined above. Leave to amend is granted in order for plaintiffs to allege an "injury in fact."

<u>Third Cause of Action for Ordinary Negligence and Sixth Cause of Action for Public Nuisance</u>

OVERRULED

Plaintiffs allege that S&W was negligent in designing the firearm, advertising the firearm, and failing to monitor and supervise the downstream retail sale of the firearm by San Diego Guns. (FAC ¶ 197). Plaintiffs also allege that S&W's design of the firearm, its advertisements for the firearm, and its failure to

DATE: 07/02/2021                    MINUTE ORDER                    Page 6
DEPT: C-66                                                          Calendar No.

**Supp. App. 6**

monitor and supervise the downstream retail sale of the firearm by San Diego Guns was a public nuisance under California Civil Code § 3480. (FAC ¶¶ 228-242).

S&W argues General Negligence and Public Nuisance are not enumerated as exceptions under the PLCAA. The PLCAA preempts common law claims like general negligence and public nuisance. Congress did not provide an enumerated exception for general negligence or public nuisance. "Congress consciously considered how to treat tort claims" and it "chose generally to preempt all common law claims" except negligent entrustment and negligence per se. (Illeto v. Glock 565 F.3d 1126, 1135 n.6 (9th Cir. 2009)).

Plaintiffs argue this claim would survive under the "predicate exception." Paragraph 197 generally alleges that S&W "design[ed] a firearm that could be easily modified, including to become an assault weapon prohibited under California law, and to fire automatically, effectively prohibited to sell to the general public under federal law (unless the NFA's requirements were followed).

As pled, these causes of action are based upon an alleged violation of a federal statute and would thus fall within the predicate exception. It is an "action" where a manufacturer or seller [allegedly] knowingly violated a State or Federal Statute applicable to the sale or marketing of the product."

First Amendment Argument

The Second Cause of Action for Negligence, the Third Cause of Action for UCL and the Sixth Cause of Action for Public Nuisance are based, in part, on S&W's advertisements. S&W argue alternatively that Plaintiffs' claims that S&W advertisements caused the shooter to commit his crimes should be dismissed because the claims violate the First Amendment of the United States Constitution.

Commercial speech that proposes an illegal transaction or that promotes or encourages an unlawful activity does not enjoy the protection of the First Amendment. See, e.g., Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 496, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations, 413 U.S. 376, 388–89, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973); see also Thompson v. Western States Medical Center, 535 U.S. 357, 367, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002); Lamar Outdoor Advertising, Inc. v. Mississippi State Tax Commission, 701 F.2d 314, 321–22 (5th Cir. 1983). Plaintiffs' First Amended Complaint alleges that the marketing in question promoted unlawful activity.

Duty to monitor, supervise or control conduct of San Diego Guns

S&W also argue that the Complaint also alleges that S&W is responsible for San Diego Guns' alleged conduct based on a claimed common law duty on the part of S&W to "monitor sales by downstream ... sellers." (FAC ¶¶ 154-157). Plaintiffs assert that S&W's alleged failure to supervise San Diego Guns' sale of the firearm was negligent (Third Cause of Action) and a public nuisance (Sixth Cause of Action). According to S&W, there is no principal-agent relationship between S&W and San Diego Guns that would lead to vicarious liability.

This argument does not dispose of the negligence cause of action and is thus inappropriate for demurrer.

**Motion to Strike by S&W**

The Motion to Strike is DENIED.

Punitive damages are properly pled by identifying a cause of action for which punitive damages are recoverable and describing the acts or omissions that constitute fraud, oppression or malice as those terms are defined in California Civil Code section 3294(c). "Malice" is defined as either: (1) conduct which is intended by the defendant to cause injury to the plaintiff, or (2) "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (Civ. Code, § 3294, subd. (c)(1).) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (Civ. Code, § 3294, subd. (c)(2).) And "fraud" is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or

DATE: 07/02/2021                    MINUTE ORDER                    Page 7
DEPT: C-66                                                          Calendar No.

**Supp. App. 7**

legal rights or otherwise causing injury." (Civ. Code, § 3294, subd. (c)(3).)

A claim for punitive damages is a serious accusation of wrongful conduct, which requires proof by "clear and convincing evidence" that a defendant has been guilty of oppression, fraud, or malice to justify a claim for punitive damages. (Mock v. Michigan Millers Mut. Ins. Co. (1992) 4 Cal.App.4th 306, 327-28; Tomaselli v. Transamerica Ins. Co. (1994) 25 Cal.App.4th 1269, 1287.) "Clear and convincing" means evidence "so clear as to leave no substantial doubt . . . [i]t must be sufficiently strong to command the unhesitating assent of every reasonable mind." (In re David C.

To support a punitive damages claim, "ultimate facts" of the defendant's oppression, fraud, or malice must be pled. (Cyrus v. Haveson (1976) 65 Cal.App.3d 306, 316-317.) Sparse claims of malice, oppression or fraud, absent specific factual allegations, are nothing more than insufficient, "patently conclusory language." (Brouseau v. Jarret (1977) 73 Cal.App.3d 864, 872.) Simply inserting buzzwords like "oppression," "fraud," or "malice," without factual support, does not create a legitimate punitive damages claim. (See id.; Grieves v. Sup. Ct. (1984) 157 Cal.App.3d 159, 166); Spinks v. Equity Res. Briarwood Apts. (2009) 171 Cal.App.4th 1004, 1055.)

As to S&W, plaintiffs specifically allege that in 2000, Smith & Wesson entered into a settlement with the federal government and several cities, and vowed to reform its business practices to prevent criminal misuse of its guns, including agreeing to not "sell . . . a weapon designed in a manner so that with a few additional parts and/or minimal modifications an owner can convert the firearms into an illegal fully automatic weapon. Complaint ¶62. Twenty years later, Smith & Wesson has continued selling firearms that it knew could be easily modified to turn into fully automatic assault weapons – even when its modified guns have been used in other mass shootings. It also fraudulently and deceptively marketed its Rifle with known intent to put them in the hands of persons in a demographic particularly likely to cause extreme harm--and indeed, harm that is the epitomy of "cruel and unjust hardship in conscious disregard" of the rights and safety of others.

S&W relies on Civil Code section 3294(b) for the proposition that when suing a corporation, plaintiffs are required to plead authorization by an S&W officer, director or managing agent in order to state a claim for punitive damages against a corporation like S&W. However, this argument misapplies Section 3294(b). That section applies when a plaintiff is suing a corporate employer for the actions of a corporate employee. The section provides in full:

An employer shall not be liable for (exemplary damages) based upon the acts of the employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct...or was personally guilty of oppression, fraud or malice.

With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

In this case, the alleged allegations are the policies of the corporation itself and not a specific employee of the corporation.  Civil Code 3294(b) simply does not apply.

### Demurrer by San Diego Guns

The following causes of action are alleged against SD Guns: (1) Products Liability – Defective Design; (2) Common Law Negligence; (3) Negligence Per Se; (4) Negligent Entrustment (NOT challenged by demurrer); (5) Public Nuisance

### Whether this is a "qualified civil action"

See discussion above with respect to S&W's Demurrer. A "qualified civil liability action" is defined, in relevant part, as seeking redress for harm "resulting from the criminal or unlawful misuse of a qualified product by the person or a third party." As stated with respect to the analysis of S&W's demurrer, the action does not need to be "solely caused" by the criminal actions.

### "Predicate Exception"

See discussion above with respect to S&W's Demurrer.

DATE: 07/02/2021                    MINUTE ORDER                    Page 8
DEPT: C-66                                                          Calendar No.

**Supp. App. 8**

First Cause of Action for Product Liability
SUSTAINED WITHOUT LEAVE TO AMEND
See discussion above with respect to S&W's Demurrer.
Fourth Cause of Action for Negligence Per Se
OVERRULED.

As Defendant concedes in its moving papers, "negligence per se" is already enumerated as an exception to immunity from causes of action against sellers of firearms under PLCAA. Demurrer 9: 12-13. Defendant however argues negligence per se is not a separate cause of action in California, so Plaintiffs cannot use this doctrine to prove San Diego Guns' negligence in this case.

However, the cause of action for negligence per se presumes negligence upon a violation of statute. Negligence per se creates an evidentiary presumption that affects the standard of care in a cause of action for negligence. Millard v. Biosources, Inc., 156 Cal. App. 4th 1338, 1353 (2007).

As alleged in the complaint, San Diego Guns violated laws applicable to the sale or marketing of firearms including but not limited to Cal. Pen. Code § 27510 by selling the Rifle to the Shooter with actual and/or constructive knowledge that the Shooter was under the age of 21 and lacked a valid hunting license. FAC ¶¶212-213. The complaint further alleges that Cal. Pen. Code § 27510 and other potentially applicable state and/or federal firearms laws are designed to protect all members of the general public from the foreseeable harm that results when dangerous possessors like the Shooter gain access to lethal weapons, and as such Plaintiffs were within the class of people Cal. Pen. Code § 27510 and/or other potentially applicable state and/or federal firearms laws are designed to protect. FAC ¶¶ 214-215. And finally, as a direct and foreseeable result of San Diego Guns' actions, Plaintiffs Goldstein and N.D. were seriously injured, and all Plaintiffs have suffered, and continue to suffer, great pain of mind and body, shock, and further severe and persistent emotional distress, physical manifestations of emotional distress, loss of enjoyment of life, loss of earnings and earning capacity, and incurred substantial expenses for medical and psychological treatment, therapy and counseling and other economic and/or noneconomic damages. FAC ¶¶ 217-218.

Third Cause of Action for Negligence; Sixth Cause of Action for Public Nuisance
OVERRULED.

See analysis with respect to S&W's Demurrer.

**San Diego Guns' Motion to Strike**
DENIED

In their Prayer for Relief, Plaintiffs generally claim entitlement to punitive damages against all defendants. (FAC, p. 51:1.)

Punitive damages are properly pled by identifying a cause of action for which punitive damages are recoverable and describing the acts or omissions that constitute fraud, oppression or malice as those terms are defined in California Civil Code section 3294(c). "Malice" is defined as either: (1) conduct which is intended by the defendant to cause injury to the plaintiff, or (2) "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (Civ. Code, § 3294, subd. (c)(1).) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (Civ. Code, § 3294, subd. (c)(2).) And "fraud" is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." (Civ. Code, § 3294, subd. (c)(3).)

A claim for punitive damages is a serious accusation of wrongful conduct, which requires proof by "clear and convincing evidence" that a defendant has been guilty of oppression, fraud, or malice to justify a claim for punitive damages. (Mock v. Michigan Millers Mut. Ins. Co. (1992) 4 Cal.App.4th 306, 327-28; Tomaselli v. Transamerica Ins. Co. (1994) 25 Cal.App.4th 1269, 1287.) "Clear and convincing" means evidence "so clear as to leave no substantial doubt . . . [i]t must be sufficiently strong to command the unhesitating assent of every reasonable mind." (In re David C.

DATE: 07/02/2021                    MINUTE ORDER                    Page 9
DEPT: C-66                                                          Calendar No.

**Supp. App. 9**

To support a punitive damages claim, "ultimate facts" of the defendant's oppression, fraud, or malice must be pled. (Cyrus v. Haveson (1976) 65 Cal.App.3d 306, 316-317.) Sparse claims of malice, oppression or fraud, absent specific factual allegations, are nothing more than insufficient, "patently conclusory language." (Brouseau v. Jarret (1977) 73 Cal.App.3d 864, 872.) Simply inserting buzzwords like "oppression," "fraud," or "malice," without factual support, does not create a legitimate punitive damages claim. (See id.; Grieves v. Sup. Ct. (1984) 157 Cal.App.3d 159, 166); Spinks v. Equity Res. Briarwood Apts. (2009) 171 Cal.App.4th 1004, 1055.)

As to San Diego Guns, plaintiffs allege it chose to violate Cal. Pen. Code § 27510 by selling the Rifle, a weapon that could have been easily modified to become an assault weapon, and multiple rounds of ammunition to the Shooter. They made the sale despite knowing that the Shooter was under the age of 21 and with the knowledge that the hunting license the Shooter presented was not valid for the purchase of any firearms in April 2019, months before the license going into effect in July 2020. (Id. at ¶ 124-137).

<u>Attorney Fees (SD Guns)</u>
DENIED.
SD Guns seeks to strike the request for attorney fees.
There is at least a potential for attorney fees under the "private attorney general doctrine" under CCP 1021.5, which provides, in part: "[u]pon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:
(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons.

<u>Injunctive Relief</u>
DENIED.
Injunctive relief is a remedy for the nuisance cause of action.

IT IS SO ORDERED.

*Kenneth J. Medel*

_____
Judge Kenneth J Medel

DATE: 07/02/2021                    MINUTE ORDER                         Page 10
DEPT: C-66                                                              Calendar No.

Supp. App. 10

Filed: 01/23/2024          Pages: 91          Document: 29          Case: 23-2992

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
330 West Broadway
San Diego, CA 92101

---

**SHORT TITLE:** Goldstein vs Earnest [EFILE]

---

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER: **37-2020-00016638-CU-PO-CTL** |
| --- | --- |

I certify that I am not a party to this cause. I certify that a true copy of the attached minute order was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at San Diego, California, on 07/02/2021.

Clerk of the Court, by: _B. Onr_ B. Onhueis _____ , Deputy

SEAN R FERRON
LAW OFFICES OF ADRIENNE D COHEN
1551 NORTH TUSTIN AVENUE # 750
SANTA ANA, CA 92705

BETSEY BOUTELLE
880 FRONT STREET # 6293
SAN DIEGO, CA 92101

MARC P MILES
SHOOK HARDY & BACON LLP
5 PARK PLAZA # 1600
IRVINE, CA 92614

P J LUCCA
DEPUTY ATTORNEY GENERAL
600 W BROADWAY # SUITE 1800
SAN DIEGO, CA 92101

NEIL G GILMOR
3636 FOURTH AVENUE # 200
SAN DIEGO, CA 92103

COREY C GARRARD
WINGERT GREBING BRUBAKER & JUSKIE LLP
600 WEST BROADWAY, SUITE 1200
SAN DIEGO, CA 92101

DANIEL R SHINOFF
ARTIANO SHINOFF
3636 FOURTH AVENUE # 200
SAN DIEGO, CA 92103

MAURICE A BUMBU
3636 FOURTH AVENUE # 200
SAN DIEGO, CA 92103

ANNE E WADDELL
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CA 94105

☐ Additional names and address attached.

---

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

Page: 1

Supp. App . 11