No. 23-02992, consolidated with Nos. 23-02993, 23-02994, 23-02995, 23-02996, 23-02997, 23-02998, 23-02999, 23-3000, 23-3001, 23-3002, and 23-3003

_____

In the United States Court of Appeals
for the Seventh Circuit

_____

KEELY ROBERTS, and JASON ROBERTS, individually and as parent and next friend of C.R. and L.R.,

*Plaintiffs-Appellees,*

*v.*

SMITH & WESSON BRANDS, INC., SMITH & WESSON SALES COMPANY, and SMITH & WESSON, INC.,

*Defendants-Appellants,*

*and*

BUDSGUNSHOP.COM, LLC, RED DOT ARMS, INC., ROBERT CRIMO, JR., and ROBERT CRIMO III,

*Non-Appellant Defendants.*

_____

On Appeal from the United States District Court
for the Northern District of Illinois
Nos. 1:22-cv-06169, 1:22-cv-06171, 1:22-cv-06178, 1:22-cv-06183, 1:22-cv-06185, 1:22-cv-06190, 1:22-cv-06193, 1:22-cv-06359, 1:22-cv-06181, 1:22-cv-06191, 1:22-cv-06361, 1:22-cv-06186
The Honorable Judge Steven Charles Seeger

_____

## REPLY BRIEF OF APPELLANTS

_____

*Continued on next page*

*Continued from prior page*

Andrew Lothson
**Swanson, Martin & Bell, LLP**
330 North Wabash Street, Suite 3300
Chicago, Illinois 60611
(312) 923-8274
alothson@smbtrials.com

February 23, 2024

Edward S. Scheideman
**DLA Piper LLP (US)**
500 Eighth Street NW
Washington, DC 20004
(202) 799-4534
edward.scheideman@us.dlapiper.com

Kenneth L. Schmetterer
**DLA Piper LLP (US)**
444 West Lake Street, Suite 900
Chicago, Illinois 60606
(312) 368-2176
kenneth.schmetterer@us.dlapiper.com

*Attorneys for Smith & Wesson Brands, Inc. (f/k/a American Outdoor Brands Corporation), Smith & Wesson Sales Company, and Smith & Wesson, Inc.*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................... 1

II.   ARGUMENT ................................................................................. 3

      A.    The district court erred by refusing to find federal officer
            jurisdiction. ....................................................................... 3

            1.    This action is against or directed to the ATF. ............................ 4

            2.    Smith & Wesson acted under the ATF. ..................................... 5

      B.    The district court also erred by not finding federal question
            jurisdiction. ..................................................................... 11

            1.    The Court has federal question jurisdiction under Grable. ....... 11

            2.    Federal question jurisdiction also exists under the artful
                  pleading doctrine. ..................................................... 20

            3.    Plaintiffs' claims are also completely preempted. .................... 23

      C.    The Crimos were not required to consent. ........................................... 25

III.  CONCLUSION ............................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alarm Detection Systems, Inc. v. Orland Fire Protection District,*
929 F.3d 865 (7th Cir. 2019) ................................................. 24

*Arizona v. Manypenny,*
451 U.S. 232 (1981) ............................................................... 3

*Baker v. Atl. Richfield Co.,*
962 F.3d 937 (7th Cir. 2020) ................................................. 9

*Beneficial Nat'l Bank v. Anderson,*
539 U.S. 1 (2003) ................................................................. 25

*Broder v. Cablevision Sys. Corp.,*
418 F.3d 187 (2d Cir. 2005) ........................................ 13, 15, 16

*Bubalo v. Navegar, Inc.,*
1997 WL 337218 (N.D. Ill. June 13, 1997) ........................... 22

*Cargill v. Garland,*
57 F.4th 447 (5th Cir. 2023) ................................................ 10

*City of Chi. v. Beretta U.S.A. Corp.,*
213 Ill.2d 351 (2004) ........................................................... 22

*Clark v. Underwriters Management Corp.,*
2003 WL 21148420 (N.D. Ill. May 15, 2003) ........................ 14

*Colo. v. Symes,*
286 U.S. 510 (1932) ............................................................. 11

*Connick v. Suzuki Motor Co.,*
174 Ill.2d 482 (1996) ........................................................... 22

*De Bouse v. Bayer,*
235 Ill.2d 544 (2009) ........................................................... 22

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.,*
91 F.4th 511 (1st Cir. 2024) .......................................... 10, 23

*Fletcher v. Bogucki,*
2021 WL 4477968 (N.D. Ill. Sep. 30, 2021) ......................... 13

*Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund,*
  538 F.3d 594 (7th Cir. 2008) ........................................................................ 21, 25

*Gamoran v. Neuberger Berman Mgmt., LLC,*
  2011 WL 476620 (S.D.N.Y. Feb. 9, 2011) ............................................ 15

*Goldstein v. Earnest,*
  No. 37-2020-00016638-CU-PO-CTL (Ca. Super. Ct. July 2, 2021) ..................... 10

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
  545 U.S. 308 (2005) .................................................................... 11, 18, 19

*Gredell v. Wyeth Lab'ys, Inc.,*
  2005 WL 4774219 (Ill. Cir. Ct. June 10, 2005) ....................................... 14

*Gunn v. Minton,*
  568 U.S. 251 (2013) ................................................................................ 17

*Ill. Pub. Risk Fund v. Purdue Pharma L.P.,*
  2019 WL 3080929 (N.D. Ill. July 15, 2019) ............................................ 21

*Lu Junhong v. Boeing Co.,*
  792 F.3d 805 (7th Cir. 2015) .................................................................. 8

*Martin v. Petersen Health Operations, LLC,*
  37 F.4th 1210 (7th Cir. 2022) .......................................................... 8, 25

*Merrell Dow Pharms. Inc. v. Thompson,*
  478 U.S. 804 (1986) ................................................................................ 18

*Miami Herald Media Co. v. Fla. Dep't of Trans.,*
  345 F. Supp. 3d 1349 (N.D. Fla. 2018) ................................................... 5

*Minnesota v. Fleet Farm, LLC,*
  2023 WL 4203088 (D. Minn. June 27, 2023) ..................................... 17, 18

*N.Y.C. Health & Hosps. Corp. v. WellCare of N.Y., Inc.,*
  769 F. Supp. 2d 250 (S.D.N.Y. 2011) .................................................... 16

*Nationwide Invs. v. Miller,*
  793 F.2d 1044 (9th Cir. 1986) ............................................................ 3, 5

*New York v. Arm or Ally, LLC,*
  644 F. Supp. 3d 70 (S.D.N.Y. 2022) ............................................. 17, 18, 20

*O'Callaghan v. U.S.*,
686 F. Supp. 2d 826 (N.D. Ill. 2010) .................................................. 25

*Oliveiro v. Amoco Oil Co.*,
201 Ill.2d 134 (2002) ............................................................................ 22

*Parsons v. Colt's Mfg. Co., LLC*,
2020 WL 1821306 (D. Nev. Apr. 10, 2020) ........................................... 9

*Prolite Bldg. Supply, LLC v. MW Mfrs., Inc.*,
891 F.3d 256 (7th Cir. 2018) ................................................................ 26

*Riordan v. Int'l Armament Corp.*,
132 Ill.App.3d 642 (1st Dist. 1985) ..................................................... 22

*Rogers v. Tyson Foods*,
308 F.3d 785 (7th Cir. 2002) ................................................................ 24

*Ruppel v. CBS Corp.*,
701 F.3d 1176 (7th Cir. 2012) .......................................................... 3, 9

*Second Amendment Arms v. City of Chicago*,
2012 WL 4464900 (N.D. Ill. Sep. 25, 2012) ........................................ 14

*Sinnott v. Town of Cicero*,
2021 WL 979169 (N.D. Ill. Mar. 16, 2021) .......................................... 24

*Spectrum Ne., LLC v. City of Rochester*,
2022 WL 787964 (W.D.N.Y. Mar. 15, 2022) ........................................ 16

*St. Charles Surgical Hospital, LLC v. La. Health Serv. & Indem. Co.*,
990 F.3d 447 (5th Cir. 2021) ................................................................ 20

*Staples v. U.S.*,
511 U.S. 600 (1994) ............................................................................... 10

*Tantaros v. Fox News Network, LLC*,
12 F.4th 135 (2d Cir. 2021) ................................................................. 20

*Tisdale v. Pagourtzis*,
2020 WL 7170491 (S.D. Tex. 2020) ...................................................... 15

*U.S. v. Nieves-Castano*,
480 F.3d 597 (1st Cir. 2007) ................................................................ 10

*Walton v. Bayer Corp.*,
643 F.3d 994 (7th Cir. 2011) ............................................................... 20

*Watson v. Philip Morris Cos., Inc.,*
  551 U.S. 142 (2007) ..............................................................*passim*

*Willingham v. Morgan,*
  395 U.S. 402 (1969) ................................................................ 3, 5

*Wis. v. Schaffer,*
  565 F.2d 961 (7th Cir. 1977) ....................................................... 5

*Young v. Bryco Arms,*
  213 Ill.2d 433 (2004) ................................................................ 21

**Statutes**

5 U.S.C.§ 701, et seq .............................................................*passim*

26 U.S.C. § 5845, et seq .........................................................*passim*

26 U.S.C. §§ 7801(a)(2)(A), 7805(a) ............................................. 8

28 U.S.C. § 1441(c)(2) ......................................................... 25, 26

28 U.S.C. § 1442(a)(1) ..........................................................*passim*

47 U.S.C. § 543(d) .................................................................. 16

27 C.F.R. § 479.102 .............................................................. 8, 24

28 C.F.R. § 0.130(a)(1)-(2) ....................................................... 8

Fed. R. Civ. P. 8(d)(2) ............................................................ 13

## I. INTRODUCTION

Plaintiffs challenge the uniquely federal determination that "AR-15 style weapons" are not machineguns under the federal National Firearms Act (NFA). They do not meaningfully dispute that their allegations are directly contrary to the ATF's long-standing administrative determination. The best Plaintiffs can muster is to claim it is "plausible" that the ATF agrees with them (Resp. at 44)—apparently without saying so publicly and despite decades of behavior by the ATF, Congress (*e.g.*, in passing the 1994 Assault Weapons Ban), manufacturers, and tens of millions of consumers consistently treating the AR-15 class of rifles as legal.

Instead, Plaintiffs attempt to convince this Court that their facial challenge to the ATF's administrative judgment is not removable from state court because they brought their challenge circuitously via this case. The removal statutes neither reward sleight of hand nor supply such a loophole.

The federal officer jurisdiction statute exists to protect federal agencies from interference by state courts that "may impede enforcement of federal law" and to insulate federal agencies from the "local prejudice" that may arise in state court proceedings, particularly those involving "unpopular federal laws or officials." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 142–43 (2007). A state court action to challenge the ATF's classification of AR-15 rifles is precisely the category of case the statute is designed to encompass.

Plaintiffs offer no direct response to the fundamental truth that this case is against or directed to the ATF itself. They argue that Smith & Wesson is merely regulated and not a party acting under the ATF, but this is not a case about the

degree of regulatory compliance or non-compliance. Indeed, there are no detailed regulations for manufacturers to delineate between NFA machineguns and other weapons. The ATF makes that determination itself. Plaintiffs' challenge to that determination requires a federal forum.

Federal question jurisdiction is also present. Plaintiffs attempt to avoid the enormous federal question here by arguing that their claims against Smith & Wesson are nothing but typical state-law claims. While one might argue that is the case for Plaintiffs' (albeit foreclosed) *affirmative misrepresentation* claim—that Smith & Wesson marketed the firearms as military-style weapons to young, impressionable men—that is not the case for Plaintiffs' claims based on alleged omissions, *i.e.*, that Smith & Wesson failed to disclose it was selling illegal NFA weapons. These omission claims are distinct and separate from any state-law claims.

Plaintiffs seek to enjoin Smith & Wesson from engaging in this alleged deception; in other words, ordering Smith & Wesson to *disclose* the firearms as NFA weapons, which effectively would bar the sale of what would become newly illegal firearms. These claims require a review of the ATF classification of "AR-15 style weapons." And tying the issues together, the risk that a state court will conduct such a review and disrupt the federal firearms administrative and tax scheme is sufficient for federal officer *and* federal question removal.

Plaintiffs cannot evade federal jurisdiction by running away from dozens of paragraphs alleging that AR-15 style rifles are "machineguns," "NFA" firearms, or fully automatic weapons, and from their repeated claims that Smith & Wesson should

be held liable for alleged NFA violations. This Court should reverse and find federal officer or, alternatively federal question, jurisdiction.

## II.   ARGUMENT

### A.   The district court erred by refusing to find federal officer jurisdiction.

Plaintiffs challenge the ATF's classification of semiautomatic AR-15 style rifles as a class of products: "Smith & Wesson violated [the] federal prohibition on the sale of machineguns" because "AR-15 style weapons like the Rifle are machineguns." (SA-96-97, SA-100 ¶¶ 86, 93, 114; SA-56, ¶ 239.)

Federal law provides for removal of civil actions "against or directed to . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof." 28 U.S.C. § 1442(a)(1). This powerful, sweeping statute confers an "absolute" right to removal. *Arizona v. Manypenny*, 451 U.S. 232, 241–42 (1981). It encompasses not just litigation squarely against the United States, but also litigation against nongovernmental parties that challenge agency policy or actions. *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012). It applies in at least two overlapping scenarios relevant here: (1) the nongovernmental party was acting under a federal agency to serve federal objectives, and (2) the judgment sought would interfere with federal agency policy. *Watson*, 551 U.S. at 150; *Nationwide Invs. v. Miller*, 793 F.2d 1044, 1045–48 (9th Cir. 1986). The key is that "[f]ederal jurisdiction rests on a federal interest in the matter," which need be nothing more than a "colorable" federal defense. *Willingham v. Morgan*, 395 U.S. 402, 406 (1969). Smith & Wesson's advertisements, which rest on a determination by the responsible federal regulatory that "AR-15 style weapons" are not illegal

machineguns, obviously raises such a colorable defense.

Plaintiffs offer no serious response to the truth that their claims are "against or directed to" the ATF. They do not deny that they seek the reclassification of semiautomatic AR-15 style rifles. Instead, they rely on the mantra that Smith & Wesson is merely a "regulated" entity. That misses the point because, unlike the cases Plaintiffs (and the district court) cite, neither Plaintiffs' claims nor Smith & Wesson's defenses turn on regulatory compliance. This case is about agency action.

Plaintiffs' allegations and Smith & Wesson's defense strike at the heart of the special partnership between the ATF and firearms manufacturers. (Case No. 1:22-cv-6169, Dkt. 48 at 11-12.) In the context of that partnership, it is the ATF alone that decides whether semiautomatic AR-15 style rifles are NFA machineguns. Plaintiffs' challenge to that decision thus belongs in federal court.

### 1. This action is against or directed to the ATF.

Plaintiffs largely ignore Smith & Wesson's argument that this case is removable under § 1442(a)(1) because their NFA machinegun claims are directed to the ATF. They neither distinguish the cases cited by Smith & Wesson, nor cite a case in direct rebuttal.

Smith & Wesson explained in the district court that the claims against it "are rooted in the ATF's administrative judgment that M&P rifles are not machineguns," and that "[t]his case will turn on the propriety of the actions of the ATF—Smith & Wesson's federal superior—with respect to classifying M&P rifles under the NFA." (*Id.* at 3-4.) It argued that its "acts were performed to advance distinctly federal objectives embodied in the federal firearms partnership, including treating

'machineguns' as a specific class of weapons under the NFA and taking (or refraining from) acts necessary to give force and effect to the ATF's determinations about which weapons qualify." (*Id.* at 5.) "With a ruling of such potential federal impact at stake, § 1442(a)(1) should be interpreted to provide the government a federal forum." *Nationwide Invs.*, 793 F.2d at 1047.

Plaintiffs' only rebuttal, that Smith & Wesson invokes a federal interest "exception" to the "acting under" clause (Resp. at 17), turns § 1442(a)(1) on its head. The statute applies to actions against or directed to an agency and extends to actions against persons "acting under" an agency in a parenthetical. 28 U.S.C. § 1442(a)(1). By arguing for removal because Plaintiffs are fundamentally challenging the ATF, Smith & Wesson invokes not an exception, but the core purpose of the removal statute. *Id.*; *Willingham*, 395 U.S. at 406; *Nationwide Invs.*, 793 F.2d at 1045–48.

Section 1442(a)(1) and the cases in Smith & Wesson's opening brief preclude Plaintiffs' procedural sleight of hand—collaterally challenging the ATF through state-law tort claims. *Nationwide Invs.*, 793 F.2d at 1045–48; *Wis. v. Schaffer*, 565 F.2d 961, 964 (7th Cir. 1977); *Miami Herald Media Co. v. Fla. Dep't of Trans.*, 345 F. Supp. 3d 1349 (N.D. Fla. 2018). This is no less an action "against or directed to" the agency than if Plaintiffs sought this relief through the Administrative Procedure Act ("APA"). Plaintiffs' failure to offer any meaningful rebuttal speaks volumes.

### 2.    Smith & Wesson acted under the ATF.

Plaintiffs' principal (and nearly only) argument—that Smith & Wesson does not sufficiently "act under" the ATF—relies on factually inapposite cases and a superficial rebuttal to the point that firearms manufacturers have a unique and close

partnership with the ATF, which Congress and the ATF created to achieve federal objectives. Plaintiffs sue Smith & Wesson to challenge something the ATF did in the context of that partnership.

### a. Plaintiffs challenge the ATF's administrative judgment, not Smith & Wesson's regulatory compliance.

Plaintiffs and the district court make the same foundational error: they treat this as a case about regulations (Resp. at 12-13) when it is about federal agency policy.

Plaintiffs' allegation is *not* that Smith & Wesson failed to comply with some ATF regulation in deciding whether its semiautomatic rifle is an NFA machinegun. It is not the case that the ATF promulgates a checklist of criteria delineating NFA machineguns from other firearms, and that Plaintiffs challenge the extent of Smith & Wesson's adherence to those criteria. Instead, Plaintiffs allege that the *ATF's decision* not to regulate semiautomatic AR-15 style rifles as NFA machineguns is incorrect because Plaintiffs think the NFA should be interpreted to include far more weapons than the ATF has ever included.[1] (SA-11-12, SA-15, SA-56 ¶¶ 45-46, 52-53, 239-40; SA-96-100, SA-114 ¶¶ 86-95, 114, 184-87.) Plaintiffs argue that "AR-15 style weapons" as a class of products are NFA machineguns, and that the ATF's consistent, contrary determinations were wrong. (*See, e.g.*, SA-97 ¶ 93.) They graft these allegations to a marketing theory by saying that Smith & Wesson did not market the rifle as a machinegun. (*See, e.g.*, SA-55-56 ¶¶ 238-41.) But calling the issue

---

[1] Plaintiffs also suggest "it is plausible to view AR-15-style firearms as constituting 'machineguns' under the [NFA]." (Resp. at 44.) But this new theory still implies a decades-long ATF failure to correctly interpret or enforce federal law and still begs the question of whether state or federal courts should resolve this federal issue.

"marketing" does not separate it from the underlying federal statutory issue. The foundational question is who is right about whether semiautomatic AR-15 style rifles are NFA firearms: the ATF or Plaintiffs? That question must be heard in a federal forum.

This makes Plaintiffs' claims and Smith & Wesson's defenses vastly different from those considered in *Watson*. 551 U.S. at 146–57. Consumers brought a putative class action in state court against a cigarette manufacturer, claiming the manufacturer manipulated tar and nicotine testing to register lower levels than would be delivered to consumers. *Id.* at 146. The manufacturer invoked federal officer jurisdiction, arguing that it "acted under" the Federal Trade Commission ("FTC") when testing because the FTC "extensively supervised and closely monitored" testing. *Id.* at 154 (cleaned up). The Court rejected that argument, chiefly because there was no "special relationship" between the manufacturer and the FTC. *Id.* at 157. The only issue was the manufacturer's compliance with the agency's "detailed rules about advertising, specifications for testing, requirements about reporting results, and the like." *Id.*

In contrast, what Plaintiffs here argue is the equivalent of the *Watson* plaintiffs claiming the FTC misclassified cigarettes under federal law. Unlike *Watson*, Plaintiffs challenge a decision made by the relevant federal agency, not the private party. This case is about the *regulator*, not the regulation.

The other cases relied on by the district court and Plaintiffs similarly miss the mark. (Resp. at 14.) Cases like *Martin v. Petersen Health Operations, LLC*, 37 F.4th

1210, 1212–13 (7th Cir. 2022), and *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 808–09 (7th Cir. 2015), concerned the defendant's degree of adherence to detailed federal regulations. But this case challenges a federal agency decision itself. On the specific issue of whether firearms are NFA machineguns, there are no detailed regulations like in *Lu* or *Martin* for Smith & Wesson to follow. The ATF has not given Smith & Wesson or other manufacturers such tools because only the ATF can determine whether firearms are machineguns under the NFA. 26 U.S.C. §§ 7801(a)(2)(A), 7805(a); 27 C.F.R. § 479.102; 28 C.F.R. § 0.130(a)(1)-(2). Only a federal court, not a state court, can resolve a challenge to the ATF's determination.

> **b.** **Because Plaintiffs' allegations are directed to the special relationship between Smith & Wesson and the ATF, federal officer jurisdiction lies.**

The *Watson* Court's dichotomy between parties with a "special relationship" to the agency sufficient to satisfy the "acting under" prong of § 1442(a)(1) and those that are merely regulated is significant. As described in Smith & Wesson's opening brief, Congress created, and the ATF implemented, a unique system of shared responsibility between the agency and manufacturers for achieving federal firearms policy objectives. (Case No. 1:22-cv-6169, Dkt. 48 at 11-12.) The ATF heralded this as a "partnership." *Open Letter to All Federal Firearms Licensees*, U.S. DOJ (Jan. 14, 2004) (*Id.*, Dkt. 48-5.) This sharing of authority to support federal policy objectives is exactly the sort of "special relationship" the *Watson* court held would have been necessary for removal. *Watson*, 551 U.S. at 156–57.

Plaintiffs' argument that "government functions do not control how Smith & Wesson marketed and advertised its M&P 15 rifle" (Resp. at 13) is misdirection.

Whether Smith & Wesson must tell consumers that "AR-15 style weapons" are machineguns exclusively hinges on the ATF's determination, contrary to the Plaintiffs' allegation. That definition may be incorporated into Smith & Wesson's advertising, but it is not a discretionary aspect of manufacturer advertising. (*See* SA-11-14, SA-48, SA-55-56, SA-59 ¶¶ 42, 45-46, 51-53, 189-91, 238-41, 262). That nexus between agency control and the Plaintiffs' allegations is far more than required by § 1442(a)(1). It "is sufficient . . . that the allegations are directed at the relationship between the [company] and the federal government." *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944–45 (7th Cir. 2020); *Ruppel*, 701 F.3d at 1182 (holding a colorable federal defense allows removal).

Plaintiffs' argument that other courts have ruled on this issue egregiously misstate the cases. *U.S. v. Olofson* did not address removal (it was in federal court) and did not address the classification of a Colt AR-15 as Plaintiffs contend. 563 F.3d 652, 659 (7th Cir. 2009). The government's prosecution was based on Olofson's illegal conversion of the Colt rifle into a weapon that "*functioned* as a machinegun." *Id.* at 662 n.8 (emphasis original). *Parsons* provides even less support because it *was removed* to federal court. *Parsons v. Colt's Mfg. Co., LLC*, 2020 WL 1821306 (D. Nev. Apr. 10, 2020). That court also dismissed the case pursuant to the PLCAA and a Nevada statute. *Id.* at *3–4. *Goldstein* addressed narrow and unrelated statutory issues on a motion to dismiss, not the correctness of the ATF's classification of AR-15

style rifles, or removal.[2] *Goldstein v. Earnest*, No. 37-2020-00016638-CU-PO-CTL, at 3–4 (Ca. Super. Ct. July 2, 2021).

Plaintiffs' argument that the ATF's foundational 1963 determination that semiautomatic AR-15 rifles are not machineguns is inapplicable (Resp. at 19 & n.11) misconstrues the way the ATF administers this issue. Plaintiffs concede "there is no requirement for a manufacturer to seek an ATF classification of its product." (Resp. at 19 n.11 (quoting ATF Handbook § 7.2.4).) Rather, the ATF expects manufacturers to monitor industry guidance and follow ATF's positions regarding NFA weapons. ATF Handbook § 7.2.4.1.

If the ATF, firearms manufacturers, and tens of millions of consumers were misclassifying one of the most popular types of rifles in the U.S., the ATF would squarely address it. It would be equivalent to the Federal Aviation Administration, airplane manufacturers, and airlines mistakenly believing for decades that Boeing 747s were legal for commercial use when they were not. It would be monumental. Here, it would mean that even Congress was wrong when it passed the 1994 Assault Weapons Ban. Yet Plaintiffs ask the Court to believe the ATF and the manufacturers all erred over the past half century. Plaintiffs' contention is baseless but what matters for present purposes is that the issue must be adjudicated in federal court.

\*       \*       \*

---

[2] Courts have emphatically rejected the idea that *Parsons* or other authorities treated semiautomatic weapons as "machineguns" under federal law. *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 91 F.4th 511, 532–33 (1st Cir. 2024); *Staples v. U.S.*, 511 U.S. 600, 612 n.6 (1994); *Cargill v. Garland*, 57 F.4th 447, 452–453 (5th Cir. 2023); *U.S. v. Nieves-Castano*, 480 F.3d 597, 600 (1st Cir. 2007).

Section 1442(a)(1) provides a federal forum for cases that challenge federal agency policy. *Colo. v. Symes*, 286 U.S. 510, 517 (1932); *Watson*, 551 U.S. at 150. Such a challenge is precisely what Plaintiffs allege here, and therefore, federal jurisdiction properly lies.

**B.  The district court also erred by not finding federal question jurisdiction.**

**1.  The Court has federal question jurisdiction under *Grable*.**

**a.  The Complaints necessarily raise a federal issue.**

Plaintiffs acknowledge that "federal law is in play" (Resp. at 29) and they dispute neither the existence of a disputed federal issue nor the principal that a *single* disputed and necessarily litigated federal issue will confer federal jurisdiction under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

Instead, Plaintiffs incorrectly argue that a court may resolve each count without reaching the federal issue. But Plaintiffs' claims turn on a necessary conclusion that federal law was violated. Plaintiffs allege that "if Smith & Wesson had complied with the NFA, Crimo would not have been able to access the weapon." (SA-56 ¶ 241; SA-115, ¶ 187.) The Complaints repeatedly allege a federal issue—a failure to "identify . . . M&P assault rifles as NFA weapons"—"leading people to believe that they can obtain these weapons without complying with the NFA's requirements" (SA-45 ¶ 168) and "violat[ing] both the NFA and the Gun Control Act" and regulatory requirements. (*id.*, ¶ 174.); Count II (SA-48 ¶¶ 189-191) (alleging failure to comply with NFA requirements and "identify their M&P Rifles as NFA weapons"); Count III (SA-52 ¶¶ 212-14) (repeating allegations); Count IV (SA-54-56

11

¶¶ 225, 238, 241) (alleging NFA violation by failing to comply with federal obligations required for NFA weapons); Count X (SA-68 ¶ 319) (incorporating allegations); and Count XI (SA-69 ¶ 328) (same); (SA-97, SA-99-100, SA-113-15 ¶¶ 93, 108-114, 174-75, 184-87.)

Plaintiffs repeatedly allege that Smith & Wesson illegally distributed an NFA weapon. (SA-15, SA-45, SA-48, SA-52, SA-55-56, SA-68-70 ¶¶ 52, 168, 174, 189-191, 212-214, 238-241, 319, 321, 328, 330; SA-96-97, SA-99-100, SA-113-115 ¶¶ 87-94, 109-114, 174-175, 184-187.) For Plaintiffs to prevail on these claims, and in light of the relief requested, a court must determine that what the ATF deemed to be a lawful semi-automatic rifle is in fact a machinegun under federal law. As such, Plaintiffs "necessarily raise a federal issue" under *Grable*.

To this point, Plaintiffs now run away from their plain and straightforward request for relief, insisting that they did not seek an order requiring Smith & Wesson to disclose that the M&P rifle is an NFA weapon. (Resp. at 28.) But the language of their Complaints is clear: "injunction issued against Smith & Wesson requiring it to cease its illegal, deceptive and/or negligent marketing campaign." (SA-124; SA-53 ¶ 224 ("Plaintiffs seek an injunction . . . against Smith & Weson requiring it to cease its deceptive marketing campaigns.") The deceptive concealment and negligence to be enjoined is the "failure to identify their M&P rifles as NFA weapons." (SA-45, SA-48, SA-51-52 ¶¶ 168, 189-90, 212-14; SA-113, SA-115 ¶¶ 174, 186.) Plaintiffs therefore seek an order requiring Smith & Wesson to identify its M&P rifles as NFA

weapons (effectively banning their sale). To issue the requested injunction, a court *necessarily* must decide whether the M&P rifle is an NFA weapon.

Even Plaintiffs' damages requests are predicated on two distinct and independent claims, one of which requires resolution of a federal issue. Plaintiffs seek damages not only based on a state claim (affirmatively marketing military-style weapons to impressionable young men) (SA-44, SA-51 ¶¶ 162-54, 201; SA-110 ¶ 160) but also based on an independent omission claim (omitting that the M&P rifle is an NFA weapon and thus not complying with NFA requirements) (SA-45, SA-48, SA-52, SA-55-56 ¶¶ 168, 174, 189-91, 212-14, 238-40; SA-113, SA-115 ¶¶ 174-75, 186-87.) A court cannot resolve the latter without necessarily deciding the quintessential federal issue of whether the M&P rifle is an NFA weapon.

There is no support for Plaintiffs' argument that embedding federal claims in counts containing state-law claims makes them no longer "separate claim[s]." (Resp. at 35.) Plaintiffs ignore, but never dispute, that "[a] single claim over which federal-question jurisdiction exists is sufficient to allow removal," *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005)), and that courts can and should "logically separate" state and federal claims even when pleaded in a single count. *Id.* at 194–95.

"A party may set out 2 or more statements of a claim . . . in a single count . . . or in separate ones." Fed. R. Civ. P. 8(d)(2). A "claim consists of 'the aggregate of operative facts which give rise to a right enforceable in the courts.'" *Fletcher v. Bogucki*, 2021 WL 4477968, at *3 (N.D. Ill. Sep. 30, 2021) (quoting *Sojka v. Bovis*

*Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012)). Courts recognize "that 'two legal theories sufficiently distinct that they call for proof of substantially different facts may be separate 'claims.'" *Second Amendment Arms v. City of Chicago*, 2012 WL 4464900, at *10 (N.D. Ill. Sep. 25, 2012) (quoting *NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992)); *Clark v. Underwriters Management Corp.*, 2003 WL 21148420, at *3 (N.D. Ill. May 15, 2003).

The Complaints plead distinct affirmative misrepresentation and omissions claims, with different theories supporting each claim. The affirmative claim not relevant to the removal argument is that Smith & Wesson acted deceptively and negligently through two forms of *affirmative* misconduct: (1) falsely suggesting a close association with the miliary and (2) appealing to young, impulsive men. The claim that supports removal is an omission claim, that Smith & Wesson deceptively failed to identify the M&P rifle as an NFA weapon and comply with NFA requirements. (SA-45, SA-48, SA-52, SA-55-56 ¶¶ 168, 174, 189-91, 212-14, 238-40; SA-113, SA-115 ¶¶ 174-75, 186-87.) The federal NFA issue in the omission claim is independent and premised on separate facts. *Gredell v. Wyeth Lab'ys, Inc.*, 2005 WL 4774219, at *9 (Ill. Cir. Ct. June 10, 2005), *aff'd*, 367 Ill. App. 3d 287 (2006) ("Illinois courts have consistently allowed a cause of action [under ICFA] for material omission separately from claims under a misrepresentation theory.").

Federal jurisdiction exists on the claims of omission—failing to disclose NFA status—resulting from adherence to ATF determinations on that very issue. They are distinct from and "logically separate" from the state-law claims in the same counts.

*Broder*, 418 F.3d at 194–95; *Gamoran v. Neuberger Berman Mgmt., LLC*, 2011 WL 476620, at *2 (S.D.N.Y. Feb. 9, 2011) (denying remand where allegations "involve[d] 'logically separate' determinations of both fact and law, [which] under *Broder* . . . must be considered as separate claims.").

Plaintiffs erroneously rely on *Tisdale v. Pagourtzis*, 2020 WL 7170491 (S.D. Tex. 2020) (Resp. at 32). *Tisdale* held that the plaintiffs nominal state-law civil conspiracy claim necessarily raised a federal issue because it was based on a conspiracy to violate a federal statute, not any state requirement. *Id.* at *5. Plaintiffs' omissions claim likewise is based solely on alleged violations of federal law.

Plaintiffs' other cases fare no better. *Daniel v. Armslist, LLC*, accepted that "two separate claims, one state and one federal," can be contained in the same count. 2016 WL 660894, at *3 (E.D. Wis. Feb. 17, 2016) (citing *Broder*). But allegations that a sale to a party barred from possessing firearms violated both federal statutory law *and* state negligence theories were "alternative theories of liability" because they were "premised upon the same conduct," specifically the defendants' acting to "broker . . . transaction[s] [with] a dangerous, prohibited purchaser." *Id. Daniel* also suggested that the acts alleged did not "seek[] redress of a distinct wrong." *Id.* (quoting *NAACP*, 978 F.2d at 291). In contrast, Plaintiffs' omissions claims based on alleged NFA violations turn exclusively on federal law and a distinct alleged wrong.

*NAACP*, like *Daniel*, was premised on a single set of facts (relating to redlining in the housing markets). 978 F.2d at 291–92. Here, Plaintiffs' separate claims are premised on distinct conduct (misrepresentations versus omissions) and distinct

wrongs (violating state-law standards by misrepresenting an alleged military endorsement to young, impulsive men versus violating the NFA by failing to disclose M&P rifles as NFA machineguns). Plaintiffs ignore that their two claims rely on entirely different sets of facts, *as well as* distinct legal theories.

Similarly, *Corporan v. Wal-Mart Stores E., LP*, involved a negligence claim based on a single transaction where the same alleged wrongdoing violated "federal and state laws." 194 F. Supp. 3d 1128, 1131–32 (D. Kan. 2016). There was no federal claim independent of the state negligence claim. *Id.* Unlike in *Corporan*, proof that Smith & Wesson violated the NFA is the necessary—and only—basis underscoring Plaintiffs' omissions claim.

While relying on inapposite cases, Plaintiffs fail to effectively address cases squarely dealing with the issue. In *Broder*, the plaintiff combined logically separate claims in a single count, one of which required resolution of an important federal issue. The court found it "clear that Broder cannot obtain the declaratory judgment he seeks, . . . that Cablevision violated 47 U.S.C. § 543(d), without prevailing on the issue of whether Cablevision in fact violated 47 U.S.C. § 543(d)." *Broder*, 418 F.3d at 195; *N.Y.C. Health & Hosps. Corp. v. WellCare of N.Y., Inc.*, 769 F. Supp. 2d 250, 256 (S.D.N.Y. 2011) (denying motion to remand where claim required the plaintiff "prove that [defendant] violated Medicare law and regulations."); *Spectrum Ne., LLC v. City of Rochester*, 2022 WL 787964, at *6 (W.D.N.Y. Mar. 15, 2022) (finding federal-question jurisdiction where the plaintiff's "claims rest on [a foundational] premise . . . by virtue of federal law.").

Other courts were not asked to consider distinct claims pled in a single count but recognized the broader point that standalone claims requiring resolution of important federal issues, however pled, belong in federal court. Plaintiffs do not dispute that *Minnesota v. Fleet Farm, LLC*, 2023 WL 4203088, at *6 (D. Minn. June 27, 2023), found the plaintiff's state-law claim properly removed because, as here, it would "hinge directly on the . . . requirements mandated by federal law and regulations." (Resp. at 33.) Plaintiffs' discussion of *New York v. Arm or Ally, LLC*, 644 F. Supp. 3d 70, 78–79 (S.D.N.Y. 2022), illustrates their disingenuous plea to ignore a substantial federal question on the assumption that *this* court can read out of their Complaints distinct claims requiring resolution of federal issues, but somehow leave them intact for *state* court consideration. (Resp. at 34.)

Absent such legal gerrymandering, Plaintiffs' claims require interpretation of federal law and were properly removed to federal court. Plaintiffs' essential argument that federal law is irrelevant cannot stand with their repeated assertions that the alleged deceptive act and negligence *was* Smith & Wesson's NFA omissions, let alone their request to enjoin Smith & Wesson from failing to identify its firearms as NFA weapons. Federal jurisdiction exists on the question of whether Smith & Wesson's M&P rifle is an NFA weapon, despite an ATF determination on that very issue.

### b.     The federal issue is actually disputed.

Plaintiffs concede this element. (Resp. at 44.)

### c.     The federal issue is substantial.

On substantiality, *Grable* looks "to the importance of the issue to the federal system as a whole." *Gunn v. Minton*, 568 U.S. 251, 260 (2013). Interpretation of

federal firearms law and "determining whether [certain] products" fall within federal terms is "plainly a substantial issue" because of the "sweeping consequences" on federal and state regulatory authority and individual liability. *Arm or Ally*, 644 F.3d at 79–80; *Fleet Farm*, 2023 WL 4203088, at *7 (finding that "Congress recognized the importance of a consistent, nationwide approach to regulating firearm sales and deemed it necessary to enact federal control over interstate and foreign commerce of firearms by creating a federal scheme of regulations over the sale of firearms" and that "resolution of this case is likely to have a substantial impact on . . . future firearm retailers.").

Plaintiffs argue that there can be no "substantial" issue of federal law for the Court to resolve if there are no federal claims. (Resp. at 34-36.) Again, however, Plaintiffs improperly assume away their distinct claims that require resolution of a disputed federal issue.

Plaintiffs then cite the syllabus in *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 804 (1986), to assert that the alleged lack of a federal private right of action means there is no substantial federal claim. (Resp. at 36.) But the Supreme Court *rejected* this proposition in *Grable*, holding that the "want of a federal cause of action" does not "preclude[] removal to federal court." *Grable*, 545 U.S. at 310. As the Court held, *Merrell* "cannot be read whole as overturning decades of precedent" by "converting a federal cause of action from a sufficient condition for federal question jurisdiction into a necessary one." *Id.* at 317. In other words, while a federal private

right of action confers federal jurisdiction, it is not a *requirement* for it.[3]

### d. The federal-state balance would not be disrupted.

Plaintiffs' argument for remand, if accepted, threatens to shift the means for enforcing the at issue firearms regulation to nebulous state-law marketing standards, effectively giving state courts the power to rewrite which firearms are classified as NFA weapons—meaning they could not be sold—thereby eliminating federal oversight of what weapons *may be* sold. This should be rejected to preserve the requisite federal-state balance.

Plaintiffs' discussion again wishes away their distinct federal claim that the M&P rifle is an NFA machinegun, and that Smith & Wesson should be liable for selling it without disclosing it as an NFA machinegun. No such distinct federal claims were pled in the cases cited by Plaintiffs. (Resp. at 37.) Here, as in *Grable*, "it is the rare state [consumer fraud act] action that involves contested issues of federal law," particularly issues over whether the relevant firearms are NFA machineguns. *Grabel*, 545 U.S. at 319. There is "no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of" Plaintiffs' claims. *Id.* at 319–20.

The other cited case, *Corporan*, 194 F. Supp. 3d at 1131–32, involved a negligence claim which was based on identical wrongdoing that allegedly violated both federal and state law. Unlike here, there was no distinct, independent federal claim. The plaintiffs in *Corporan* were not trying to change how the "straw purchase"

---

[3] Regardless, a federal cause of action exists here. (*Infra* at 24.)

regulations work; they merely alleged that the defendants violated undisputed standards. *Id.* at 1130, 1133–34.

Allowing a *federal* court to determine the federal law that Smith & Wesson allegedly violated "would be consistent with, and not disruptive to, the 'congressionally approved balance of federal and state judicial responsibilities.'" *Arm or Ally*, 644 F.3d at 82 (citing *Grable*, 545 U.S. at 314). But allowing *state* courts to resolve a federal question that implicates a substantial federal interest threatens to upend a federal regulatory scheme. *Id.*; *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 147 (2d Cir. 2021) (deciding the application of federal law and "the extent to which [state and federal law] may conflict" raise questions with "precisely the sort of significance to the federal system that supports adjudication in a federal forum").

### 2. Federal question jurisdiction also exists under the artful pleading doctrine.

Plaintiffs acknowledge that courts evaluate parties' efforts to manufacture federal jurisdiction by including insubstantial, implausible, and foreclosed claims. (Resp. at 39-40); *Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011) (refusing to allow "utterly groundless" claim to create federal jurisdiction). Courts undertake this inquiry in other circumstances as well. *Ploss as Trustee for Harry Ploss Tr. DTD 8/16/1993 v. Kraft Foods Grp., Inc.*, 431 F. Supp. 3d 1003, 1018–20 (N.D. Ill. 2020) (class certification). So too, whether Plaintiffs used artful pleading to avoid federal jurisdiction is a threshold issue the Court must resolve. *St. Charles Surgical Hospital, LLC v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 451 (5th Cir. 2021) (recognizing

courts will only respect disclaimers "so long as they are not merely 'artful pleading designed to circumvent federal officer jurisdiction'").

Plaintiffs cite no authority demonstrating that federal courts may not similarly evaluate merits when plaintiffs seek to *avoid* federal court jurisdiction by manufacturing groundless state claims. Federal courts have recognized their authority to do just that. *Ill. Pub. Risk Fund v. Purdue Pharma L.P.*, 2019 WL 3080929, at *2 (N.D. Ill. July 15, 2019) (recognizing authority to consider whether state claims "so lack[] in merit as to be wholly insubstantial or frivolous."). Plaintiffs' assertion that the "court declined to assess the merits of plaintiff's claims" (Resp. at 42) ignores that the court, after recognizing its authority to assess the merits, declined to do so because the merits *had not been raised.*[4] These decisions are consistent with the purpose of the artful pleading doctrine—to prevent Plaintiffs from avoiding federal jurisdiction by disguising federal claims in state-law clothing. *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008). That requires some preliminary assessment of whether viable state claims have even been pled.

Such a task is particularly easy here because, on the merits, Plaintiffs fail to refute Illinois Supreme Court authority squarely barring their state claims. Causation is lacking on claims against firearms manufacturers where the "harm is the aggregate result of numerous unforeseeable intervening criminal acts by third parties not under defendants' control." *Young v. Bryco Arms*, 213 Ill.2d 433, 456

---

[4] The court also only considered jurisdiction under *Grable*, not artful pleading.

(2004); *City of Chi. v. Beretta U.S.A. Corp.*, 213 Ill.2d 351, 395–414 (2004). That applies here, with multiple intervening acts and wrongdoing alleged against Crimo, his father, and the Gun Store Defendants. Plaintiffs argue that those cases involved public nuisance claims (Resp. at 41), but causation is a threshold element of every tort claim, *Beretta*, 213 Ill.2d at 394–95, and of statutory consumer fraud claims, *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 501 (1996). Plaintiffs' threshold causation problem does not turn on how they frame their claims.

Plaintiffs ignore another obstacle foreclosing their negligence-based tort and statutory claims. Manufacturers "owe no duty . . . to prevent their firearms from 'ending up in the hands of persons who use and possess them illegally.'" *Beretta*, 213 Ill.2d at 393; *Riordan v. Int'l Armament Corp.*, 132 Ill.App.3d 642, 646–647 (1st Dist. 1985). Plaintiffs do not attack that ruling because they cannot. Plaintiffs' citations to Connecticut and Nevada cases (Resp. at 41) say nothing about the Illinois claims foreclosed by Illinois Supreme Court authority.

Plaintiffs also fail to allege that Crimo even saw the alleged advertisements, let alone was deceived by them. That too is fatal to their statutory claims. *Oliveiro v. Amoco Oil Co.*, 201 Ill.2d 134, 155 (2002); *De Bouse v. Bayer*, 235 Ill.2d 544, 554–55 (2009) (rejecting consumer fraud claim because plaintiff did not "receive, directly or indirectly," defendant's advertising); *Bubalo v. Navegar, Inc.*, 1997 WL 337218, at *2, 8–9 (N.D. Ill. June 13, 1997) (rejecting claims where shooter was not alleged to have seen the ads).

Plaintiffs cite nothing preventing this Court from exercising its authority to consider the state claims, and nothing contravening clear Illinois Supreme Court authority defeating those claims.

### 3. Plaintiffs' claims are also completely preempted.

Plaintiffs' assertion that Congress did not "intend[] to eliminate state law regarding unfair and deceptive marketing" (Resp. at 44) is a misleading characterization of their claims. Plaintiffs allege that:

A. The M&P rifle purchased by Crimo was an illegal "machinegun" under the NFA;

B. Smith & Wesson deceptively and unfairly marketed the firearm by not identifying it as an "NFA weapon"; and

C. Smith & Wesson manufactured and sold these weapons without complying with NFA requirements that apply only if the rifles are NFA "machineguns."

These claims require rulings that Congress intended to be resolved as a matter of federal rather than state law. Plaintiffs now argue it is "plausible" that ATF determinations may show that semiautomatic AR-15 style rifles constitute NFA machineguns. (Resp. at 44.) This assertion has been squarely rejected. *Estados Unidos Mexicanos*, 91 F.4th at 532–33. Regardless, disputes over interpretations of federal law should not be resolved by patchwork state-court rulings to which federal claims are appended. Instead, agency determinations can and should be challenged in federal court through the APA, 5 U.S.C.§ 701.

If Plaintiffs believe that the ATF's rulings demonstrate that Smith & Wesson illegally sells NFA weapons, they may press that claim in federal court. If Plaintiffs have doubts, or wish to challenge existing federal regulatory rulings, they can either

challenge operative ATF determinations or, if they believe more is required, seek a new ATF determination (27 C.F.R. § 479.102(c); ATF Handbook § 41), and if they lose, seek judicial review under the APA.

Federal law provides the exclusive avenue for Plaintiffs to obtain the relief they plainly seek: a declaration that the M&P rifle (and necessarily all weapons with the same features, *i.e.*, "AR-15 style weapons") is an NFA machinegun.

Plaintiffs conflate the right of action with the remedy by asserting that the NFA "does not create a private right of action." (Resp. at 42.) Plaintiffs cite a case that indicates that any "federal remedy—*no matter how limited*" supports complete preemption. *Rogers v. Tyson Foods*, 308 F.3d 785, 788 (7th Cir. 2002) (emphasis added). "A federal cause of action need not provide the same remedies as the preempted state cause of action." *Id.* at 790. A private right of action exists for claims seeking declaratory and injunctive relief (such as that pled here) and for monetary damages. *Sinnott v. Town of Cicero*, 2021 WL 979169, at *4 (N.D. Ill. Mar. 16, 2021); *Alarm Detection Systems, Inc. v. Orland Fire Protection District*, 929 F.3d 865, 871 n.2 (7th Cir. 2019) ("Declaratory relief 'presupposes the existence of a judicially remediable right' and thus cannot be pursued without a predicate right of action.").

Plaintiffs do not dispute their right to seek a federal court declaration if they believe AR-15 style rifles are NFA weapons, or to bring an APA claim against the ATF to reclassify those rifles as machineguns. If Plaintiffs are reticent to bring their federal claims in federal court, NFA regulations provide an administrative procedure through which Plaintiffs may seek a determination of whether to classify a firearm

as a machinegun, and the APA provides a right of action for federal judicial review. Federal law has displaced potential state-law claims in determining whether AR-15 style rifles are NFA weapons, and private parties have a federal mechanism to enforce their claims. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003); *Martin*, 37 F.4th at 1213; *Franciscan*, 538 F.3d at 596.

Plaintiffs cannot use state tort claims to seek a state court declaration that all semi-automatic rifles are federally prohibited machineguns. State courts may not resolve that uniquely federal issue. There is an exclusively federal framework to secure binding legal determinations whether a firearm is an NFA weapon. Complete preemption thus further supports federal question jurisdiction.

## C.     The Crimos were not required to consent.

The Crimos were not required to consent to federal jurisdiction. First, consent of co-defendants is not required for federal officer removal. *O'Callaghan v. U.S.*, 686 F. Supp. 2d 826, 828 (N.D. Ill. 2010). For federal question jurisdiction, consent is not required for pure state-law claims over which the court lacks supplemental jurisdiction. 28 U.S.C. § 1441(c)(2).

Plaintiffs do not accuse Crimo or his father of violating the NFA or of misleading (or any) marketing. And Plaintiffs do not allege Smith & Wesson engaged in the shooting or helped Crimo obtain a FOID card. The state-law claims against the Crimos have no connection to the claims resting on federal issues against Smith & Wesson. Any other holding would render Section 1441(1)(a) meaningless (limiting consent to "only" defendants "against whom a [claim under Section 1331] has been asserted[.]").

Plaintiff cites cases that nearly all considered former versions of Section 1441(c)(2) and, even then, are inapplicable. Section 1441(c)(2) was amended in 2011 to remove the "separate and independent" language on which those prior cases rely. Plaintiffs cite *Am. Fire & Cas. Co. v. Finn* to argue that "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under §1441(c)." 341 U.S. 6, 14 (1961). There, the "single wrong" was that each defendant was responsible, but failed, to pay for a loss based on nearly identical obligations. Here, the claims against Smith & Wesson are based on entirely different facts and seek different relief from those against the Crimos. Plaintiffs neither contest that premise nor authority that supplemental jurisdiction is lacking where the "operative facts" differ, even if the claims have "some things in common." *Prolite Bldg. Supply, LLC v. MW Mfrs., Inc.*, 891 F.3d 256, 258–59 (7th Cir. 2018).

## III. CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court reverse and vacate the district court's order remanding these actions to state court.

Dated: February 23, 2024

DLA PIPER LLP (US)

By: _/s/ Kenneth L. Schmetterer_

Andrew Lothson
**Swanson, Martin & Bell, LLP**
330 North Wabash Street, Suite 3300
Chicago, Illinois 60611
(312) 923-8274
alothson@smbtrials.com

Edward S. Scheideman
500 Eighth Street NW
Washington, DC 20004
(202) 799-4534
edward.scheideman@us.dlapiper.com

Kenneth L. Schmetterer
444 West Lake Street, Suite 900
Chicago, Illinois 60606
(312) 368-2176
kenneth.schmetterer@us.dlapiper.com

*Attorneys for Smith & Wesson Brands, Inc. (f/k/a American Outdoor Brands Corporation), Smith & Wesson Sales Company, and Smith & Wesson, Inc.*

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP RULE 32(g) AND CR 32(c)

The undersigned, counsel of record for the Defendants-Appellants furnishes the following in compliance with Fed. R. App. P. 32 and Cir. R. 32:

I hereby certify that this brief conforms to the rules contained in Fed. R. App. P. 32 and Cir. R. 32 for a brief produced with a proportionally spaced font. The length of this brief is 6,958 words.

Dated: February 23, 2024

DLA PIPER LLP (US)

By:   _/s/ Kenneth L. Schmetterer_

Kenneth L. Schmetterer

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2024, the Reply Brief of Defendants-Appellants was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: February 23, 2024

DLA PIPER LLP (US)

By:   */s/ Kenneth L. Schmetterer*

Kenneth L. Schmetterer